## Armor *et al. versus* Cochrane *et al.*

1. An intestate died leaving real estate and children; a daughter afterwards married, her husband's interest in her share was sold by the sheriff; the land was divided, valued and ordered to be sold under partition; it was struck down to one of the sons, afterwards all but the daughter agreed that one tract should be conveyed to the administrator; specific execution by the heirs of the purchaser nineteen years afterwards, was decreed to the administrator. The daughter died, the husband died fourteen years after the decree; within five years of the death of the husband, the heirs of the daughter brought ejectment for her share. *Held*, that they could not recover, those claiming under the administrator not being affected with a trust.

2. When an administrator, &c., desires to bid, he should obtain leave from the court or have some other person appointed to sell under Act of February 24th 1834, § 44.

October 27th and 28th 1870. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Westmoreland county:* No. 98, to October and November Term 1870.

This was an action of ejectment by William Armor and others, children and heirs of Jane Armor, late Cochrane, deceased, against John Cochrane and others, brought January 12th 1869, for an undivided eighth part of 270 acres of land.

John Cochrane, the elder, died in 1816, leaving eight children,

[Armor *v.* Cochrane.]

amongst whom were John, William and Jane. The decedent died seised of two tracts of land—one containing 187 acres; the other, 83 acres, being the premises in controversy. Jane Cochrane married John Armor in 1819. In 1829 John Armor's life estate, as husband of Jane, in her father's real estate, was sold by the sheriff to John Cochrane. In October 1830 an inquest in partition in the Orphans' Court, on John Cochrane's estate, valued the large tract at $10 per acre, and the small tract at $16 per acre. On the 26th of February 1831 all the children but William, who was the administrator, appointed him their attorney, to refuse the real estate at the valuation, and to do all things necessary to procure an order of sale. The inquisition was confirmed March 3d 1831, and a sale, by William, ordered to be made April 11th 1831. He returned that he had sold the land to John Cochrane— the large tract at $9 per acre, $1689.75; the small tract, $13 per acre, $1055. The sale was confirmed May 23d 1831, and the deed made by William as administrator, to John, August 24th 1831. John died in 1844.

At February Term 1848 William presented a petition to the Orphans' Court, setting forth that on the 4th April 1831, he, John, Samuel and James, "heirs of John Cochrane, the elder, deceased, agreed together and the rest of the heirs afterwards assented and agreed thereto," that the whole of the land of the decedent should be bid off and returned as sold to John at a price then agreed to by the heirs, and that a deed should be made to John, that he sold and conveyed the land to John at the prices above stated; that John did, by parol, bind himself to sell and convey to William 81 acres of the lands sold: the prayer was for a specific execution of John's contract, which was decreed February 3d 1850, and a deed made to William. Jane died in 1859; her husband died in 1864.

Samuel Cochrane, one of the heirs, testified that the heirs were notified of the sale, and all were present except Mr. and Mrs. Armor, who lived at some distance; it was understood John was to purchase the place; there was no agreement except that John was to bid it off; no price fixed till after it was bid off; the price was fixed after it was knocked down; John was to convey to William the 81 acres; William was to pay the witness and James; John was to pay the girls—two of them bid; the sale was cried for an hour.

The plaintiff then offered in evidence the deposition of Samuel, taken under the proceedings for specific performance, in which, in testifying as to the agreement, he said that it was between John and William, by it John was to bid off the whole place at a price agreed upon—$9 and $13 per acre for the respective tracts—and it was struck down to John in pursuance of the agreement.

[Armor *v.* Cochrane.]

The offer was rejected by the court, and a bill of exceptions sealed for the plaintiff.

There was no actual fraud alleged. The plaintiffs claimed on the ground that William, the administrator, being a purchaser at his own sale, there was legal fraud. The defendants claimed under William and John Cochrane.

On motion of the defendants, the court ordered a nonsuit; this and the rejection of their offer of evidence were assigned for error on the removal of the case to the Supreme Court, by the defendants.

*E. Cowan,* for plaintiffs in error.—Jane's heirs had ten years after their father's death to bring suit: Henry *v.* Carson, 9 P. F. Smith 297. The cestui que trust may take the land, however fair the sale, to the trustee: Ex parte Lacey, 6 Vesey 625; Ex parte Bennett, 10 Id. 381; Fisk *v.* Sarber, 6 W. & S. 22; Leisenring *v.* Black, 5 Watts 304; Beeson *v.* Beeson, 9 Barr 280. For laches to operate, it must appear that the cestui qui trust knew of the fraud: Randall *v.* Errington, 10 Vesey 423; Campbell *v.* Walker, 5 Id. 678; s. c., 13 Id. 602; Roche *v.* O'Brien, 1 Ball & B. 330; Lewin on Trusts 475. As to rejecting the evidence: Bull *v.* Towson, 4 W. & S. 557.

*H. D. Foster* (with whom were *H. C. Marchand* and *A. A. Stewart*), for defendants in error.—The proceedings in the Orphans' Court were conclusive: Gilmore *v.* Rodgers, 5 Wright 123; Dixcy *v.* Laning, 13 Id. 143. The delay was too great: Kribbs *v.* Downing, 1 Casey 399; Strimpfler *v.* Roberts, 6 Harris 283. Declarations of trust must be in writing: Act of April 22d 1856, § 4, Pamph. L. 533; Purd. 497, pl. 3; Warfield *v.* Fox, 3 P. F. Smith, 382.

The opinion of the court was delivered, January 3d 1871, by

SHARSWOOD, J.—This was a compulsory nonsuit entered in the court below, on motion of the defendants, after the conclusion of the evidence of the plaintiffs. The question then is, whether the plaintiffs had made out a case which in any aspect entitled them to go to the jury? No actual fraud was pretended. But it was maintained that as it appeared that William Cochrane, the administrator of John Cochrane, Sr., had become the purchaser at his own sale, made by the order of the Orphans' Court, his title and that of his heirs were defeasible at the election of any of the cestuis que trust who did not agree or assent to the purchase. It is not necessary to decide whether, when one of the heirs of a decedent, who happens to be also the administrator, is ordered by the Orphans' Court to make sale of the real estate under proceedings in partition, he is thereby precluded from his equal right

[Armor v. Cochrane.]

with all the other heirs of bidding at, and becoming a purchaser at the sale.  It may be doubted whether the doctrine of Fisk v. Sarber, 6 W. & S. 18, does not apply.  The administrator, as such, has nothing to do with the realty; he is the mere organ of the court in making the sale, and it is possible that he ought not to be regarded as in any sense a trustee until the purchase-money has been received by him.  But in reference to this we intimate no opinion.  It would of course be advisable in all such cases, if the administrator has any wish to be a bidder, either that an order should be obtained from the court allowing it, or that application should be made for the appointment of some other suitable person as trustee for the purpose, under the 44th section of the Act of February 24th 1834, Pamph. L. 81, which the court has authority to make whenever the executor or administrator refuses to execute the order.  In this case, however, upon the plaintiffs' own evidence, although there may have been some understanding among the heirs before the sale that William was to become the purchaser of one of the properties, and John of the other, yet according to the clear testimony of Samuel Cochrane, the only witness produced and examined, the agreement was not made until after the sale, at which the whole was knocked down to John Cochrane.  He said : "No particular agreement except that John bid off the land; no price fixed until it was bid off; the agreement was fixed after it was knocked down."   And again : "John Cochrane claimed Armor's share; were notified of the sale, that it would be sold on this day; two of my sisters bid on it;" "the land was cried for an hour."   The sale was confirmed by the Orphans' Court, and the deed made accordingly by William Cochrane to John Cochrane for the whole, August 24th 1831. Nearly nineteen years afterwards, on petition to the Orphans' Court, William Cochrane obtained a decree for the specific performance of this parol contract, John Cochrane being then deceased.  It was certainly competent for William, after the sale, to purchase from John—no actual fraud or deterring of bidders at the sale being pretended.  The thing was evidently an amicable arrangement and understanding among all the heirs, Mrs. Armor included, as appears by the petition of William Cochrane to the Orphans' Court, which is a part of the testimony produced by the plaintiffs.  That neither she nor her husband were at the sale is accounted for by the fact that his curtesy estate in her purpart had been sold by the sheriff and was vested in John Cochrane. We see no evidence, therefore, to affect the heirs of William Cochrane with any trust for Mrs. Armor or her heirs as to this land.

The deposition of Samuel Cochrane was clearly inadmissible. The witness himself was on the stand under examination.  What he had stated before could not be shown, as it seems, for any

[Armor *v.* Cochrane.]

purpose. What the deposition was offered for does not appear. He had at the time testified to nothing which the deposition touched upon, and if he had, the plaintiffs could not contradict and impeach their own witness. But even if admitted, it would not have helped the plaintiffs' case. It is plain that in the proceeding in which that deposition was taken, it was not material at what point of time, whether before or after the property was struck off, the agreement was entered into; and it is, after all, mere inference from the general language used in the deposition that the witness then stated it to be before and not after the sale.

Judgment affirmed.