# WHEELING.

## Winans *et al.* *v.* Winans *et al.*

Submitted June 17, 1882—Decided November 24, 1883.

(*Woods, Judge, Absent.)

1. Where a person other than a regular judge has tried a cause below, and no objection was made on the trial to his authority, and the

*Submitted before Judge W. took his seat on the bench.

record is silent on the subject, such objection cannot be raised for the first time in this Court, provided the Constitution and laws of this State, under any form of election or appointment, authorize such person to sit as judge in such cause. (p. 682.)

2. Section 16 of art. VIII. of the Constitution of 1872 of this State, authorizes the Legislature to provide by law for the election of a special judge to hold a *special* as well as general term of the circuit court where, from any cause, the judge of such court shall fail to attend. (p. 682.)

3. Section 1 of chapter 129 of the Acts of 1872-3, is constitutional ; and under its provisions a special judge may be selected, as therein provided, to hold a *special* as well as a general or adjourned term of the circuit court, where the regular judge is not in attendance. (p. 682.)

4. When a commissioner, appointed by a decree in a suit in equity to sell land, becomes himself the purchaser, the purchase is voidable at the election of any party interested in the land sold. And the law is the same where the purchase is made nominally by a third person, who is reported by the commissioner to the court as the purchaser, but who really purchased for the commissioner and conveyed the land to him after the purchase as reported had been confirmed. (p. 688.)

5. A release obtained, by a commissioner, who purchased the land at his own sale, from the persons interested in the land, will not operate as a confirmation of such purchase, unless it clearly appears that such release was obtained without fraud or concealment and after a full disclosure of all the facts which rendered the sale voidable. (p. 688.)

6. Clauses 2, 6, 8, 9 and 10 of the syllabus in *Newcomb* v. *Brooks*, 16 W. Va. 32, and the principles therein declared, approved, reaffirmed and applied. (p. 688.)

The facts of the case are fully stated in the opinion of the Court.

*J. L. Hall*, for appellants.

*Shelton L. Reger* for appellee, Reger.

SNYDER, JUDGE:.

In a suit in equity brought in the circuit court of Barbour county by G. E. Jarvis against the executor of Benjamin Winans, deceased, to subject certain lands of the estate of said Winans to sale for the payment of his debts, Albert

G. Reger was by a decree in said suit appointed a special commissioner to sell said land; that, on October 14, 1867, the said Reger as such commissioner sold a tract of one hundred acres of said land at public auction as required by said decree and one T. A. Bradford became the purchaser thereof at the price of one hundred and sixty dollars; that, on November 19, 1867, said sale was confirmed, and by a subsequent decree said commissioner was directed to convey the said land to the purchaser; that said Reger as commissioner did, by deed, dated January 11, 1869, convey the land to said Bradford, and by deed of same date said Bradford and wife conveyed said land to said Reger.

At September rules 1877, Gideon Winans, B. F. Winans and John Winans, devisees and distributees of said Benjamin Winans, filed their bill in the circuit court of said Barbour county against said Albert G. Reger, Lewis C. Daniels and others, in which, after alleging the facts before stated, they aver, that the sale of said one hundred acres of land by said Reger as commissioner to Bradford was fraudulent and void; that in fact said Reger was the real purchaser, the said Bradford having purchased it under a secret agreement or understanding with said Reger that the latter was to have it; that said Reger had enjoyed the rents and profits of the land for nearly ten years and sold therefrom a large quantity of valuable timber worth near one thousand dollars and appropriated the same to his use; that said Reger had sold said land to the defendant, Lewis C. Daniels, for four hundred and fifty dollars, and that by deed, dated February 10, 1877, he conveyed the same to him. The prayer of the bill is, that the sale of said land be set aside as fraudulent and that said Reger be required to account to the devisees and distributees of said Benjamin Winans for the rents and profits and timber taken therefrom, and for general relief, &c.

The defendant Albert G. Reger filed his demurrer and answer to said bill. In his answer, to which the plaintiffs replied generally, he admits that he as commissioner made the sale of said one hundred acres of land, but he positively denies that said Bradford purchased the same for him or that there was any understanding or agreement between said Bradford and him concerning said purchase; and he avers that

two or more of the heirs of said Benjamin Winans were present at the sale, and that he used his best efforts to get the best price possible for the land; that some time after the sale, the said Bradford sold the land to him at the price of two hundred and ten dollars, of which he paid in cash fifty dollars, and agreed to pay the one hundred and sixty dollars due from Bradford on his original purchase; that at the time of his purchase the timber on the land was inaccessible and valueless, but that he had since then had a public road made to it and caused improvements to be made on it; that the allegation of the bill, that he took near one thousand dollars worth of timber from it is false and untrue; that in April, 1869, eight of the nine heirs of Benjamin Winans, including the plaintiffs, made transfers and releases to him of their interests in said land—three of them by deed and the other five by written contract which he exhibits.

And he admits that he, on February 10, 1877, sold the land to said Lewis C. Daniels and by deed of same date he and his wife conveyed the same to said Daniels with covenants of general warranty; that the price at which he sold said land was four hundred and fifty dollars of which two hundred dollars had been paid to him and two hundred dollars was payable July 1, 1878, and fifty dollars the residue July 1, 1879; and he denies all the charges of fraud and improper conduct made in plaintiffs' bill.

The exhibits referred to in the bill and answer were duly filed and depositions were taken by the plaintiffs and the fendant, Reger, to sustain the allegations, denials and averments of the bill and answer respectively.

The record recites that: "At a special term of the circuit court of Barbour county, held on the first day of March, 1878, by the Hon. G. D. Camden, it appearing to the court that process in this cause has been duly executed," &c. The decree, then, proceeds to dismiss the plaintiffs' bill as to the defendant, Reger, with costs. From this decree the plaintiffs have appealed to this Court.

The errors assigned here by the appellants are in effect:

*First*—That the said special term of the circuit court was held by one G. D. Camden, who was not an elected judge of the State, and

*Second*—That the sale of the one hundred acres of land should have been set aside, because the commissioner who made said sale was the real purchaser.

1. The question raised by the first assignment of error is made for the first time in this Court. No objection was made or exception taken in the court below, and nothing, so far as the record in this cause discloses, appears to show how the said Camden was appointed or by what authority he acted as such judge. The proceedings of the lower court are presumed to be regular, unless the contrary affirmatively appears upon the record. Objections taken for the first time in this Court will not be regarded in any matter of which the court had jurisdiction or which might have been remedied in the trial-court if objected to there. But as we know judicially, that G. D. Camden was not a judge of this State at the time this cause was heard, it is incumbent on us to enquire, whether or not under any circumstances, by the laws of this State, he could have properly acted as judge of said court. His election or appointment and regular qualification will be presumed, the record not showing anything to the contrary, provided such election or appointment and qualification are in any manner, under any circumstances or for any purpose warranted by the Constitution and laws of the State. *Feaster* v. *Woodfill*, 23 Ind. 493; *Vandever* v. *Vandever*, 3 Metc. (Ky.) 137; *Sweeptzer* v. *Gaines*, 19 Ark. 96.

The only question, then, that can be considered by this Court under this assignment is, whether or not, under our laws, authority can be conferred upon any person, not a judge of the State, to discharge the duties of a circuit court by holding a special term of such court or by trying any particular cause at such term. The solution of this question depends upon the Constitution and statutes of this State.

Our Constitution—section 16 of article VIII—provides, that: "The Legislature shall provide by law for the holding of circuit courts where, from any cause, the judge shall fail to attend, or if in attendance, cannot properly preside."

The Legislature, under this constitutional provision in chapter 129 of the Acts of 1872-3, has provided that, in either of the cases mentioned in said provision, any citizen of this State who is a "discreet and proper person, learned

in the law," may be selected as judge to hold the term or
try any particular cause. The selection to be made in the
one case by the attorneys at such court and in the other by
the parties or their attorneys in the particular cause.

This Court in the case of the *State* v. *Williams*, 14 W. Va.
851, held that, under said constitutional provision and statute,
any person, having the statutory requisites, might be selected
as a special judge "to hold the *general* term of a circuit court,
where, from any cause, the judge fails to appear, or if pres-
ent cannot properly preside." But as to whether, under the
Constitution and statute, such special judge may hold a
*special* term of such court, the court was equally divided.

I understand from the opinion of the judges in that case,
who held that a *special* judge might hold a *general* term, but
not a *special* term of a circuit court, that they ground the
distinction taken upon the fact, that the authority of such
special judges to hold general terms had been recognized by
the judiciary of the States of Indiana and Missouri which
have constitutional and statutory provisions "somewhat sim-
ilar to ours," but that inasmuch as the power of special
judges to hold *special* terms, or of such judges to hear or try
a particular cause at a general or special term, had not been
recognized in those States, they refused to extend the power
to such cases in this State. This, it seems to me, is not sus-
tained by the facts, as will appear by a reference to the deci-
sions of the supreme courts of those States.

The case of *Ketcham* v. *The N. A. & Salem R. R. Co.*, 7
Ind. 391, was tried by the judge of another circuit at a *spe-
cial* term of the circuit court, and the court in its opinion says:

"The third section is remedial, intended to prevent any
inconvenience or failure of justice in case of the disability of
the circuit judge. As such it is to recieve a liberal construc-
tion. In this light, proceedings under it far more irregular
than anything complained of here, were sustained in *Murphy*
v. *Barlow*, 5 Ind. 230. If it were to be taken literally and
imperative, it is very doubtful whether any court could be
held under it. But regarding it as a remedial act, in some
measure directory, a substantial compliance is sufficient."

The cases of *Feaster* v. *Woodfill*, 23 Ind. 493, and *Mitchell*
v. *Smith*, 24 *Id.* 252, were special cases tried by a special

judge. In the first mentioned case the court, after reviewing a number of their decisions, say : "It is, then, well settled that such an appointment may be made, and when made, even in a case not within the act, that it gives a color of right to the office, so as to make a court *de facto*, if not *de jure;* that in a case where the appointment is regular on its face, the objection must be made at the trial, or all objections to the authority of such appointee will be deemed waived." 23 Ind. 499.

The cases of *Harper* v. *Jacobs*, 51 Mo. 296, and *Smith* v. *Haworth*, 53 Mo. 88, were likewise cases in which during the term a special judge was appointed to try a particular cause.

A number of similar decisions may be found in Kentucky and Arkansas and, perhaps, other States— *Turner* v. *Commonwealth*, 2 Metc. 619, 628 ; *Vandever* v. *Vandever*, 3 *Id.* 137; *Smith* v. *Blakeman*, 8 Bush. 476; *Sweeptzer* v. *Gaines*, 19 Ark. 96.

The cases above cited from the States of Indiana and Missouri are decisions on appeals from the courts of common pleas of those States, which are statutory courts, and may not for that reason be entirely analogous to the case under consideration. However, the Constitutions of those States have similar provisions to that of our State in regard to the election or appointment of the judges of all the courts of the State. The decisions of those States are, therefore, direct authority to show that special judges may be appointed or elected for the trial of particular cases in a manner different from that prescribed by the Constitutions of the States.

The Constitution of Kentucky, adopted in 1850, provides —section 1 article IV—that the judicial power " shall be vested in one supreme court, *the courts established by this Constitution*, and such courts, inferior to the supreme court, as the General Assembly may, from time to time, erect and establish." And section 16 of said article declares that: "*A circuit court shall* be established in each county " of the State. Sections 20 and 23 provide that said *circuit judges shall* be elected for the term of six years. And section 28 is as follows: " The General Assembly shall provide by law for holding circuit courts when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside."

This provision is identical with section 16 of article 8 of our Constitution of 1872. And to carry it into effect, our Legislature adopted the statute of the General Assembly of Kentucky which declares that: "When, from any cause the judge of *the circuit court* fails to attend, or, if in attendance, cannot properly preside *in a cause or causes* pending in such court, the attorneys of the court who are present shall elect one of their members then in attendance to hold the court for the occasion, who shall accordingly preside—Art. 13 ch. 27 of Rev. Stat. Ky.; (1 vol. Stanton's Ed. Rev. Stat. 321).

This statute has been held constitutional by a number of decisions of the supreme court of Kentucky rendered prior to the adoption of our Constitution of 1872. And those decisions hold not only that a *special* judge may be elected by the attorneys of the court for the holding of an entire term, but that it may be done for the trial of a particular case in which the regular judge cannot properly preside though in attendance—*Turner* v. *Commonwealth*, 2 Metc. 619, 628; *Vandever* v. *Vandever*, 3 *Id*. 137; *Smith* v. *Blakeman*, 8 Bush 476.

Under the settled rule of law, that when a State adopts the constitutional or statutory provisions of another State, it also adopts the judicial construction of those provisions in the State from which they are taken, it seems to me, that our Constitution and statute—having been taken from the Constitution and statute of Kentucky—the people and Legislature intended, also, to adopt the judicial construction of the courts of that State; and having done so, this Court must hold that under said provisions a special judge may be appointed by the bar of any circuit court to hold a term of such court, whenever, from any cause, the judge of such court is not in attendance.

In *Sharpe* v. *Robertson*, 5 Gratt. 518, the court of appeals of Virginia held that the act of March 31, 1848, of that State establishing a special court of appeals, was constitutional.

In respect to special terms of the circuit courts, our Constitution provides, that: "A circuit court shall be held in every county twice a year. But provision may be made by law for special terms; and a judge of any circuit court may hold the court in another circuit." Section 11, article VIII.

The Legislature, in pursuance of said provision, on the 21st December, 1872, passed an act, entitled, "An act to organize *the circuit courts,* establish their jurisdiction and prescribe the mode and manner of proceeding in said courts." This act, after dividing the counties of the State into nine judicial circuits, providing for the election of a circuit judge for each of said circuits, for the holding of two regular terms in each county, the times for holding the same and the jurisdiction thereof, provides for the holding of adjourned and *special* terms. By section 11 it is declared that: "At any such special term any civil case may be tried which could lawfully have been but was not tried at the last preceding term that was or should have been held * * * and any criminal cause may be tried at such special term as if it were a regular term; * * * every such special term may be held by the judge of the circuit, or if he be dead or absent, by any other circuit judge who may be present; and it may be held part of its session by one judge and part by another; and such special terms may be adjourned from time to time during the intervals between the regular terms, as the judge may deem necessary for the dispatch of the business of the court."

It is obvious that this statute was intended to give effect to the tenth, eleventh, twelfth and thirteenth sections of article VIII of the Constitution, and has no reference whatever to the subsequent section 16 of said article.

No provision having been made by said act, or elsewhere, to give effect to said section 16, the Legislature by an act, passed November 14, 1873, nearly a year after the passage of said act of December 21, 1872, passed the act, entitled "An act to provide for holding *circuit courts* where, from any cause, the judge shall fail to attend, or if in attendance cannot properly preside." Chapter 129, Acts 1872–3.

This act is in almost the same language used by the Kentucky statute hereinbefore referred to. In its provisions it uses the exact language employed by the Constitution, "*a circuit court.*" Neither the word *general, special* or *adjourned* occurs in it anywhere. It seems to me, if the Legislature had intended to confine the act to *general* terms, it would have employed some qualifying word to indicate that intention.

The words " circuit court " are as applicable to *adjourned* or *special* terms as they are to *general* terms, for in either case the court is " a circuit court." It seems clear to my mind, that the Legislature, having provided by the act of December 21, 1872, for the holding of general, adjourned and special terms of the *circuit courts*, that they in the subsequent act of November 14, 1873, by the use of the words *circuit courts* intended to embrace by said words not only general, but also adjourned and special terms. The court of a special term is as much a circuit court as that of a general term having, as we have seen, by express statute the same powers both in civil and criminal cases. It can not be questioned that said act embraces and applies to *adjourned* terms; and if so, it would certainly be difficult to assign any valid reason why it does not, also, apply to *special* terms.

In deciding a question of this kind, involving, probably, many other cases tried throughout the State, where its decision might work vast injury and loss to numerous private parties, it would be inexcusable, it seems to me, to be controlled by mere verbal criticisms or nice differences which may attach to the meaning of words, and at most are simply sophistical and conjectural. The intent and object of the statute must be looked to, and, even though the most appropriate form of words may not have been used, the solution, in all doubtful cases, must be in favor of that interpretation which will most probably remedy the evil or avoid the inconvenience sought to be effected by the statute. The object of both the constitutional provision and the statute was certainly remedial, intended to avoid delay and prevent any inconvenience or failure of justice in case of the absence or disability of the judge. It, therefore, by the established rules of construction must be construed liberally to effect the remedy intended to be applied by the law-makers.

Whether such legislation is wise or unwise, or whether possible abuses might not result from it, are questions that address themselves to the law-makers, not to the courts. The only question before us is the constitutional power of the Legislature to pass the statute now in question, and whether said statute applies to the case now before us. All other questions are legislative and not judicial. Upon mature con-

sideration, therefore, I am of opinion that, under the Constitution and laws of this State, a person, having the statutory requisites, could by proper appointment hold a special term of the circuit court, for a county in this State, where, from any cause, the judge of said court is not in attendance. And that, as no objection was taken in the court below, we must hold that the Hon. Gideon D. Camden properly held the special term of the circuit court of Barbour county, at which the decree in the cause now under consideration was entered.

I have come to the conclusion, just stated with less hesitation than I might have otherwise done, for the reason that, since the date of the decree in this cause, the provision of the Constitution referred to has, by an amendment adopted in 1880, expressly provided that the Legislature may provide by law for holding "*special* terms of the circuit courts," thus making the decision of this Court in the *State* v. *Williams, supra*, direct authority for any case that may hereafter arise.

2. Did the circuit court err in refusing to set aside the sale of the one hundred acres of land sold by the defendant, A. G. Reger, as commissioner, on the ground that said commissioner was interested in the purchase?

This Court in the case of *Newcomb* v. *Brooks*, 16 W. Va. 32, after a full and exhaustive examination of the authorities and principles involved in such cases, *held:*

1. "A purchase by a fiduciary, while actually holding a fiduciary relation, of trust-property, either of himself or of the party to whom he holds such fiduciary relation, is voidable at the option of the party to whom he stands in such relation although the fiduciary may have given an adequate price for the property and gained no advantage whatever.

2. "A fiduciary cannot make a valid purchase of the trust-property, though it be made at a public judicial sale under a decree made in an adversary proceeding. Any such purchase may be avoided at his option by any party to whom he holds such fiduciary relation.

3. "If a fiduciary purchases trust-property and then resells it to a purchaser for valuable consideration with notice of the character of his title, the person to whom the fiduciary occupied the fiduciary relation may at his option avoid the

sale, though the property has passed into the hands of a sub-purchaser with notice.

4. "But if the sub-purchaser had no notice of the character of his vendor's title, the sale cannot be set aside, but the party can have redress against the fiduciary personally to the extent of the profit he made by the re-sale.

5. "But when such sales are sought to be avoided, the suit for the purpose must be brought in a reasonable time, though the property remains in the hands of the fiduciary."

The principles thus declared are well sustained by the authorities, and are founded upon sound reason and morality. It is the duty of the seller to get the best possible price for the property sold, and is the right of the buyer to make the purchase at the lowest price.    To allow a person to occupy the position of both buyer and seller is to subject him to a temptation which neither the law nor good morals can permit.    The capacities in which he acts are inconsistent and in direct conflict with each other.    The danger of the temptation to serve his own interest at the expense of those whom he represents, out of the mere necessity of the case, disqualifies a commissioner from having any interest in the purchase of property which he is directed to sell.    The fact that he has undertaken the office of making the best possible sale for others, incapacitates him from acting on the other side; and consequently, any sale he may make while occupying such an antagonistic position is, at least, voidable at the option of those interested in an advantageous sale of the property—*Davoue* v. *Fanning*, 2 Johns. Chy. 252; *Howery* v. *Helms*, 20 Gratt. 1.

Applying these principles to the case before us, it seems to me that the purchase of the one hundred acres of land by Bradford was merely colorable, that A. G. Reger the commissioner, was the real purchaser, and that, therefore, the sale was voidable.    The only witnesses who have testified as to the character of the sale are Bradford and the defendant Reger.    Between these there is a direct conflict.    Bradford is an entirely disinterested witness while Reger is both pecuniarily and morally interested in sustaining the sale.    But aside from the direct evidence, the facts and circumstances tend very strongly to confirm Bradford's testimony.  Noth-

87

ing was ever paid by Bradford on his purchase, although the
decree required a cash payment and the sale was reported
by Reger and confirmed by the court without such payment.
It is not likely that Reger would have reported the cash pay-
ment as having been actually made, unless it had been under-
stood that Reger was responsible for the purchase-money.
Moreover, on the very day the deed for the land was made
by Reger as commissioner to Bradford, the said Bradford
and wife reconveyed the land to Reger.   Without referring
further to the evidence and circumstances, I am fully satis-
fied that by an understanding at the time of the sale Brad-
ford became the purchaser of the land for himself and Reger
or for Reger alone.

The defendant Reger, however, insists that after the sale
he obtained a written release or conveyance from eight of
the nine heirs of Benjamin Winans, deceased, for their inter-
ests in said land.   It is alleged in the bill and not denied in
the answer that some of the heirs were minors.   Whether
they so continued or whether they are a part of the heirs
who signed the written releases to Reger does not appear,
and in the absence of any denial in the answer or proof on
the subject, the fact must be taken against the purchaser.
The evidence does show that the plaintiffs are quite illiter-
ate and ignorant, easily imposed upon, and that they relied
on the information and representations, of the defendant,
Reger, who informed them that the writings referred to
were receipts for a small balance which he paid them at the
time of obtaining said writings.   All the plaintiffs except
John Winans, as well as several others who executed said
papers, did so by their cross-mark.   The defendant, being
the commissioner of the court, and having the funds of the
said heirs in his hands for distribution, stood in a fiduciary
relation to them and they had a right to rely upon his repre-
sentations.   In order to avail himself of any benefit growing
out of transactions had in that relation between them, he
must show the utmost fairness and good faith and that he
had fully disclosed to the persons so releasing all the facts
which rendered the purchase by him voidable at their elec-
tion.   The burden was on him to do this and he has not
satisfactorily done it in this case.   The mere fact that he re-

quired and obtained from these heirs a release of their interests in the land raises a suspicion against him. If he had acted disinterestedly and fairly in his purchase he could have relied on his ability to show that fact whenever it became necessary, his title being valid without the release could not be aided by the release, and being invalid without confirmation it was not, in my opinion, under the facts and circumstances of the case, made valid by the alleged releases or confirmation.

The most serious difficulty in the way of any relief to the plaintiffs in this cause, is the delay in instituting their suit. But as it is alleged in the bill and not denied in the answer, that some of the heirs interested were infants, this would save the rights of such as were of that class. There are other facts which tend strongly to excuse the laches of the plantiffs. The defendant, Reger, as stated, being the commissioner of the court, and having the funds of these heirs in his hands for distribution, occupied towards them a confidential relation; they had a right to suppose that he was dealing with them fairly, and as it is not shown that they had knowledge of the facts which entitled them to avoid the sale before this suit was brought, it would be inequitable to deny them relief on account of their delay. The land at the time of the purchase was entirely unimproved, and it does not appear that anything has been done with it since except to remove timber from it. Considering all the facts shown by the record, and especially the fact that the land, before a large part of the valuable timber had been removed from it, sold for only one hundred and sixty dollars and afterwards for four hundred and fifty dollars, I do not think the delay in bringing their suit is sufficient to bar the right of the plaintiffs and the other devisees of Benjamin Winans of the relief to which they are entitled.

It appears, however, that the defendant, Reger, sold and by deed, dated February 10, 1877, conveyed the said land to the defendant, Lewis C. Daniels, and as it does not appear that said Daniels had any notice of the invalidity of the title of said Reger, under the rule of law, before stated, the said Daniels must be held to be a *bona fide* purchaser without notice. This being the case, the said sale cannot now be set

aside, but must be held binding, and redress granted against appellee, Reger, personally, and the said Daniels as purchaser will also be liable to the parties entitled thereto for any part of the purchase-money for said land paid by him after he had notice of the facts affecting the validity of the title of said Reger to said land. *Wormley* v. *Wormley*, 8 Wheat. 421; *Murray* v. *Finster*, 2 Johns. Chy. 155. The relief given in such case is the difference between the price at which the land was first sold and the price which it brought at the re-sale, together with the rents and profits and the damage done to the land by the removal of the timber or otherwise between the time of the confirmation of the first sale and the date of the re-sale after deducting a reasonable compensation for the permanent improvements, if any, which were placed upon the land during the interval aforesaid.

I am, therefore, of opinion, that the said decree of the circuit court of Barbour county should be reversed with costs to the appellants against the appellee, Albert G. Reger; and this cause is remanded to the said circuit court with directions to take such proceedings therein, according to the principles settled by this opinion, as may be necessary to give the relief indicated, and further according to the rules and principles of courts of equity.

JOHNSON, PRESIDENT:

I have carefully examined the opinion of my Brother Snyder, and the authorities cited, and have reviewed my opinion in *State* v. *Williams*, 14 W. Va. 851. I would still be disposed to adhere to the position there taken but for the fact, that a number of the authorities cited by Brother Snyder, which I had not seen and which construe constitutional provisions similar to ours, and which were in force, and the construction put upon them before our constitution was adopted, which show that a *special* judge may be selected by the bar to try a *special case* at either a *special* or *general* term of the court. This principle, in my opinion, is much more hurtful to the public interest than to allow a *special* judge to be selected to hold a *special* term of the court. The evils of such a practice to my mind, are very great, and are to-day exhibiting themselves throughout our State. This principle

is so broad, that it not only includes, but goes far beyond the
principle that would permit the selection of a special judge
to hold a *special* term.    Great as the evils of such a practice
are, and will continue to be, it is beyond the power of the courts
to arrest them.    It is for the Legislature to correct them if
it regards them as I do.    In this fast age I fear the tendency
is to have cases *disposed of with despatch* rather than to have
*principles* which are to govern and control property, liberty
and life, correctly declared and applied.    I tried in the case
of *The State* v. *Williams* to restrict the legislation in this ten-
dency as far as possible, but I find the position is untenable,
as the decisions rendered before our Constitution was adopted,
construing constitutional provisions of a similar character
with ours, and in such case is binding on us, have failed to
apply such restriction.

With regret, I am compelled to concur in the opinion on
this subject.    I concur in the residue of the opinion, as it is
manifestly correct.

GREEN, J., CONCURRED.

REVERSED.    REMANDED.