# CHARLESTON.

J. WALTER BROWN *et al.* v. H. G. McGRAW *et al.*

(No. 5116.)

Submitted February 24, 1925.          Decided March 31, 1925.

1.  EXECUTORS AND ADMINISTRATORS—*Administrator May Purchase Real Estate of Decedent at Regular Judicial Sale; Deed to Administrator not Voidable on Complaint of Heir, if Sale is for Adequate Price, at Open Competition and not Fraudulent, and Proceedings are Regular.*

    An administrator who is also a creditor of his decedent is not precluded from being a purchaser of real estate of the decedent made at a regular judicial sale at auction by a special commissioner, in a suit to sell the same to satisfy debts, the personal property being insufficient. If the sale be for an adequate price, at open competition, without suspicion of fraud or collusion, and the proceedings and sale be regularly conducted, reported and confirmed, the simple fact of purchase by the administrator will not render the deed voidable upon complaint of an heir of the decedent.  (p. 612).

    (Executors and Administrators, 24 C. J. § 1591.)

2. SAME—*That Administrator was Guardian of Decedent's Infant Heirs Held not to Render Deed to Decedent's Land Purchased by Him at Judicial Sale Voidable.*

Nor will the fact that the administrator was at the time of making the bid at such sale and subsequent confirmation by the court also guardian of the infant heirs of the decedent, render the deed voidable, it appearing that such purchase was for an adequate price, above suspicion, and for the best interests of the estate. (p. 611).

(Executors and Administrators, 24 C. J. §§ 1589, 1591 [1926 Anno.])

(NOTE:—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Wyoming County.

Suit by J. Walter Brown and others against H. G. McGraw and others. From a decree for plaintiffs, defendants appeal.

*Reversed; bill dismissed.*

*J. Albert Toler* and *Grover C. Worrell*, and *Harold A. Ritz*, for appellants.

*Poffenbarger, Blue & Dayton*, and *F. E. Shannon*, for appellees.

LIVELY, PRESIDENT:

This action in equity in the nature of a bill of review was brought in the circuit court of Wyoming County to recover the mineral and surface to a tract of land containing about 58.25 acres situate in that county, and to have cancelled conveyances made to defendants, the Wyoming-Pocahontas Coal & Coke Company (the claimant of the minerals at the date of the filing of the bill), and to M. H. Sluss, Matilda Brown, C. W. Cook, Wilson Cook, H. G. McGraw, R. B. Cook, P. G. Hurst and Dora Hurst, (the claimants of the surface at the date of the filing of the bill), and to have certain intermediate conveyances set aside. The lower court entered a decree granting the relief prayed for, and this appeal followed.

On December 18, 1913, H. S. Brown died intestate, leaving a widow, Ophelia Brown, and two children by a former marriage, Lura, now Lura E. Walker, then 13 years of age,

and J. Walter, then 11 years of age, who (the children) are the plaintiffs in this suit.

At the date of his death H. S. Brown was the owner in fee simple of a farm containing about 58.25 acres situate on Laurel. Creek in Wyoming County. The personal estate of the decedent was appraised at $176.75. He also owned, certain timber which he had cut from a part of the above described tract and contracted to sell; this contract was completed by his administrator after his death, the proceeds of which contract, after paying the expenses incident to completing the delivery of the timber, amounted to $93.32, making the aggregate of the personal estate $270.07. The debts owed by the decedent at the time of his death and accumulating thereafter totaled approximately $396.43, of which $83.00 was due and owing defendant, Joel McGraw. The widow and children claimed as exempt the decedent's personal estate as appraised. This left the aforesaid $93.32 as the only available personal assets with which to pay the indebtedness.

On January 5, 1911, on the motion of Ophelia Brown, widow of H. S. Brown, Joel McGraw, one of the defendants herein, was appointed administrator of the personal estate of said decedent, and on March 23, 1914, he instituted a suit in chancery in the circuit court of Wyoming County, as administrator against the widow and heirs at law of the decedent and the several creditors of his estate, the object of which action was to have his accounts as administrator settled and to subject the real estate of said decedent to the payment of the indebtedness against the estate, the personal property being insufficient to pay the debts.

On June 16, 1914, Joel McGraw qualified as guardian of the infants, Lura E. and J. Walter Brown.

At the term of court held in July, 1914, the case was referred to a commissioner in chancery for the purpose of ascertaining what personal estate H. S. Brown owned at his death, the character and value thereof; the amount of personal property in the hands of the administrator; a settlement of the administration of the estate by him; what debts H. S. Brown owed at the time of his death, to whom payable,

their nature and respective amounts and priorities; what
real estate was owned by him at the time of his death, its
quantity, description and location; the liens against said real
estate, their amounts and priorities; and such other matters
as any party in interest might require, the same being per-
tinent, or such other matters as said commissioner himself
might deem pertinent whether required or not.

At a later date the commissioner reported an indebtedness
amounting to $396.43 against the estate, and only $93.32 of
personal assets in the administrator's hands available for the
settlement of the debts. This report was confirmed in Oct.
1914. The commissioners appointed to assign dower having
reported that they had laid off and assigned to the widow
a portion of the improved part of the decedent's realty,
15.50 acres being allotted to the widow as her dower interest,
this report was also confirmed in Oct. 1914; and a decree was
entered directing Col. Childers as special commissoner to sell
the real estate at public auction, to the highest bidder, the
proceeds of the sale to be applied to the payment of the in-
debtedness and the remainder, if any, to be paid to Joel Mc-
Graw as Guardian of said infant children. Col. Childers
who was directed to make the sale had represented the ad-
ministrator in said suit. It was further provided in said de-
cree that the timbered portion of the realty, amounting to
18.50 acres, should be offered for sale first, and if this por-
tion sold for a sufficient sum to pay the indebtedness and
the expense of administration and costs of suit, no other
part of the land was to be sold. On April 5, 1915, said
special commissioner, after having advertised the time of
the sale, the terms thereof, etc., as required by the decree,
offered the 18.50 acres of timber land, and not receiving
an offer sufficient to pay all of the indebtedness of the es-
tate, put the whole tract up for sale. The highest bid re-
ceived was $525.00, and the administrator, for the purpose
(as stated by him in his deposition) of stimulating the bid-
ding and thereby protecting the interest of his infant wards,
bid $600.00 for the property, he, as he claims, having been ad-
vised by the special commissioner that he had a legal right to
bid. The commissioner testified that he did not remember

giving this advice. The bid of $600.00 proved to be the highest one and the real estate was knocked down to Joel McGraw. Upon report of this sale to the court, it was duly confirmed; and at a later date, it having been reported to the court that all the purchase money had been paid by the purchaser, Joel McGraw, and disbursed to the parties entitled thereto, Col. Childers as special commissioner was directed to convey the tract of 58.25 acres to the purchaser, and by deed of Nov. 9, 1915, he did convey said tract of land as directed.

By two deeds, one dated Feb. 19, 1917, and the other dated March 17, 1917, Joel McGraw and wife conveyed their entire interest in the said tract of land and two additional acres, to J. C. McGraw, (Joel McGraw, according to his testimony, making a profit of $800.00 on his original investment); and by a series of conveyances made since that time, the title to the minerals and surface in this tract is now vested in the defendants as hereinbefore set forth. The widow of H. S. Brown died in 1918, of influenza, she then being about 30 years of age. The land in controversy has greatly increased in worth, the mineral rights being particularly valuable. The enhanced value of the property can be attributed in no small measure to the building of a railroad through that territory, which took place subsequent to the conveyances by Joel McGraw to J. C. McGraw.

It appears from the depositions that the defendant, Joel McGraw, had taken the female heir, Lura Brown, into his family and had supported and educated her at his expense, until she obtained a sufficient education to teach in the public schools; and had arranged with Joe Harless, a brother of the mother of the children to take and care for the male heir, J. Walter Brown. It further appears that a short time after Lura Brown attained the age of 21 years, she demanded a settlement from her guardian concerning the money that had come into his hands as guardian, and that he, on March 14, 1922, made a settlement with her and took her receipt for the sum of $54.00, which, according to the testimony of the defendant, Joel McGraw, was the full amount due her by reason of his guardianship. Lura in her deposition admitted

receiving the $54.00, but claimed that at that time she did not know her legal rights in regard to the sale of the land in question.

A considerable part of the record is taken up with evidence as to the adequacy of the price paid by Joel McGraw for the 58.25 acres of land. The evidence shows that at the date of the sale the price was a fair and adequate one. There is nothing to convict the administrator of fraud in fact. His bid was in the open, at a fair price, the best that could be obtained and made by him to protect the estate. The court, upon report by its commissioner and being fully advised as to the conduct of the sale, accepted the bid. It would have been better if leave to bid had first been obtained from the court. But who could anticipate that the bids from others would be too low? McGraw had to act at the sale, or ask for a resale for inadequacy of price, which is not always granted, the costs of resale being considered. The confirmation by the court of his bid would be persuasive that if he had first asked leave, it would have been granted. But granting that there was no fraud in fact nor any fraudulent intent or design, the question recurs whether his act of purchase is fraudulent in law by reason of his fiduciary character, and is voidable for that reason.

The theory of the bill is that the sale and conveyance to Joel McGraw having been made while plaintiffs were under age, was voidable at their election and option within a reasonable time after the attainment of their majority, because of the fiduciary relation which McGraw, the purchaser, bore and sustained to them and the property at the time of the sale and subsequent conveyance. This right of avoidance in the heirs is claimed, even if it should appear that all the proceedings in the cause in which the sale and conveyances were made, were regular and free from error; that the plaintiffs herein, both of whom were infants at the time of the sale of the land, have the right, under the statute, to have the decree of sale and the decree confirming the sale reviewed and reversed, for error, within one year after attainment of their majorities, upon a bill of review filed for that purpose, said decrees having been made and entered in the years 1914

and 1915, and long before the passage of Chapter 58 of the Acts of 1921, limiting the time for the filing of bills of review to eight months, in the case of decrees thereafter to be entered, and saving to infants leave to file such bill within one year after becoming of age, in the case of any decree made or entered before the passage of the act; that J. Walter Brown, one of the heirs and one of the plaintiffs in the present bill, was still an infant when it was filed; that the other plaintiff had attained the age of 21 years, but was only 21 years and about 11 months old, at that time; and the bill is predicated also upon the saving clause provided in favor of infants by Section 7 of Chap. 132 of the Code; and upon the right of the female plaintiff more than twenty-one years and six months old, at the date of the commencement of this suit, to have the benefit of the bill filed by her brother who was still under twenty-one years of age at that time, they being co-tenants of the land and joint defendants to the suit in which it was sold. All of the defendants demurred to the bill and filed answers.

The point upon which the controversy in this case turns is, whether the purchase of the 58.25 acre tract by Joel McGraw at a judicial sale made under authority of the court in a proceeding instituted by him as administrator of the estate of H. S. Brown, deceased, to pay the indebtedness of the estate, the purchase taking place while he was also acting as guardian of the infant heirs of the decedent, makes the sale voidable at their option.

In determining this question we must keep in mind the capacity in which Joel McGraw acted when he applied to the court to have the real estate sold to pay the decedent's debts. He was then acting as administrator. He had not at that time been appointed as guardian of the infant heirs, (although before the sale was made he had qualified as such). But even if such had been the case, there were two distinct estates, that of the decedent and that of the infant heirs. As administrator he was the representative of the decedent's estate and as guardian he was the representative of the minor heirs. In neither capacity was the title to the realty vested in him.

Bearing in mind that Joel McGraw at the time of the sale was administrator of the decedent's estate and guardian of his infant heirs, we will consider the validity of the purchase first from the standpoint of his guardianship. The sale was not brought about by him as guardian. It was his duty as administrator to bring to the attention of the court the necessity for the sale of the real property to pay the indebtedness of the estate, the personal property being insufficient for that purpose. The real property of a, decedent who dies intestate descends to his heirs subject to the payment of his debts. The mere fact that McGraw was guardian of the infant heirs would not make the purchase by him voidable at their option. As guardian he did nothing to bring about the sale, nor as such was he in a position to prevent it. The sale was not in execution of the trust which he assumed as guardian. "The rule which disables a trustee from purchasing for his own benefit at a sale made by him in the discharge of a fiduciary duty is not applicable to the guardian of minor heirs, when a sale of real property belonging to the estate of the deceased is sold by an administrator under the order of the probate court for the purpose of satisfying a claim against the estate which has been duly presented and allowed." *Barber* v. *Bowen*, 47 Minn. 188. "They have confounded two distinct estates, that of the deceased interstate and that of his minor sons, and the representatives of each, one being the administrator, the other a guardian, and seek to apply to the latter the very wholesome rule which disables and prohibits one who occupies a trust relation from purchasing for his own benefit at a sale made by him in the discharge of a fiduciary duty , , , , , , . . The administrator, by order of the court and to satisfy a claim against the estate which he represented, was compelled to make the sale. It was not directed or controlled in any manner by Mrs. Barber (guardian of the minor heirs). At no time during the proceedings was she in a position when self-interest might conflict with her duty in respect to the real property in question; or her duty towards her wards; for, as to the sale, she occupied the place of a stranger. Her relationship to the trust-estate afforded no opportunities for neglect or misconduct in regard

to it. She was entirely powerless, in her capacity as guardian of the estate of these minors, to interfere with or control the property which was to be sold in pursuance of the order of the court, and not in the execution of any trust which she had assumed. It is only when power and duty, the constituent elements of a trust, towards a specific subject—matter, are conferred, that fiduciary character and responsibility begins; and the relation which disables and prohibits must be one in which knowledge, by reason of confidence reposed, might be acquired, or power exists, to affect injuriously the interest of the beneficiary or advance that of the trustee. But the rule referred to is not pertinent or applicable to a case like this, where a sale is made by an administrator, or other public officer, under proceedings adverse to the interest of the cestui que trust, and the trustee has not the means in his power to prevent the sale.'' *Barber* v. *Bowen, supra.*

In Chorpenning's Appeal, 32 Penn. State Repts. page 317, the court said: ''The appellee was entirely powerless in his capacity of guardian in relation to the land. He had neither money nor influence as such. It may be conceded, that he stood very near the line of disability as a purchaser for his own interest, but still outside of it, if the reason for the law is to govern. Authority, however, sustains his position. In *Prevost* v. *Grantz, Peters* C. C. Rep. 378, it was said, per Washington, J., 'I know of no principle of equity, however, which will invalidate the title of a trustee to land, which the law has taken out of his hands, and which he purchased from one appointed by the same authority to sell it.' ''

There was no disqualification on the part of Joel McGraw, guardian, to purchase the tract of land in controversy. Was there such disqualification because of his being administrator of the decedent's estate at the time of his purchase? There can be no question but that as a general rule one occupying a fiduciary relation can not purchase and hold for his own benefit, as against the claims of his beneficiary, property sold by him, or under his direction and control as such fiduciary, and that such a purchase is voidable at the option of the beneficiary. *Newcomb* v. *Brooks,* 16 W. Va. 32;

*Ayres* v. *Blair*, 26 W. Va. 558; *Wians* v. *Wians*, 22 W. Va. 678. The appellants while recognizing this general rule, contend that where the sale of the trust-property is made pursuant to a decree of the court by a special commissioner or other agent appointed by the court, the fiduciary has the right and privilege of purchasing. The appellees, on the other hand, maintain that there is no such exception or qualification of the general rule. While it cannot be said that the courts are in complete accord in recognizing this exception, there is substantial authority to the effect that it is well founded. In fact, the decisions holding that a fiduciary may purchase at a sale by court decree and not by him, without fraud or fault on his part, but in good faith, are almost as numerous as those which hold that he has no right to purchase where he conducts the sale. 11 Am. & Eng. Ency. Law page 1067; 24 C. J. 625; and cases cited infra. An examination of a number of cases holding contra reveals the fact that they were, for the most part, jurisdictions in which the administrator himself is given the power of sale by order of the court, and so he was in reality both buyer and seller, there being in such cases a clear conflict of interests. In this State the administrator has no title to or control over the real estate of the decedent, except that he may by a suit call the court's attention to the fact that the personal propery of the decedent being insufficient to pay the indebtedness of the estate, in the administrator's opinion, the realty should be sold to pay the debts. If the administrator does not take this step the creditors of the decedent may do so. The court in a judicial proceeding determines whether or not it is necessary to sell the real estate; and when it so decides it appoints a special commissioner to make a public sale of the property. The administrator does not conduct the sale nor does he have any control over it. The common law rule that an administrator is not required nor authorized by law to take charge of the real estate of his decedent is the law of this State, with the exception above noted, and it can hardly be called an exception, for even then the administrator does not take charge of the real estate. *Fields et al.* v. *West,* 83 W. Va. 128. In such jurisdictions, it is

held that a purchase by the administrator at a judicial sale conducted by the court is a valid purchase.

"According to the rule of the common law that an executor or administrator is a trustee of the personal estate only, and owes no duty to the heirs, it is held in some jurisdictions that where realty belonging to a decedent's estate is sold under a mortgage, or an execution or other judicial process, the executor or administrator may purchase for himself, unless the sale was made in consequence of his default for not paying the debt for which the property was sold, when he had sufficient funds in his hands for that purpose, or where he was guilty of fraud. But it has also been held that the executor or administrator has no right to purchase at such sales." 11 Am. & Eng. Ency. of Law, page 1067.

In *Johns* v. *Norris,* 22 N. J. Eq. Reports 110, the court said: "It is claimed that Norris, as administrator, was trustee for the heirs and creditors, and therefore, had no right to purchase any of the estate for himself, and that the other defendants had notice of this fact. Noah Norris, as administrator, was a trustee of the personal estate for the creditors and next of kin. He had no power over the real estate, nor trust as to it."

"An administrator, as such has no authority or control over the real estate of his intestate, and assumes no obligations in reference to it, and owes no duty to the heirs. He is not, therefore, precluded from purchasing such real estate upon a foreclosure sale, and from holding the same in his own right." *Hollingsworth* v. *Spaulding,* 54 N. Y. (Sickels), 636.

"It is no valid objection to a sale of land of a decedent by a master, under an order of court made on a bill filed by the administratrix, that the administratrix was the purchaser." *Cooley* v. *Cooley's Heirs* et al., 37 S. W. (Tenn.) 1028.

"And if the sale is made not by a representative but by a commissioner appointed to sell, or some other person not acting under the order of the representative, the representative may properly become a purchaser." 24 C. J. page 635.

"The policy of the law is not to permit the same person to represent conflicting interests, hence trustees, sheriffs, constables, administrators, executors, guardians and all persons vested with authority to sell the property of others, are themselves forbidden from taking interests in the sale. A sale made in violation of this rule will always be vacated upon a motion made in due time. Whether a party to a suit or action is disqualified from purchasing depends upon whether he is in contemplation of law in charge of the sale, and hence, in effect, acting as trustee or agent or is under obligations to discharge the whole liability in satisfaction of which the sale is made. By the English practice the conduct of the sale is usually given by the plaintiff, and neither he nor any other parties to the suit is at liberty to bid, unless leave to do so is granted by the Court; where however, the conduct of the sale is not in charge of the plaintiff, but is by law or the decree or order of the court, committed to some other person, there is no disqualification on the part of the plaintiff to purchase." Freedman on Void Judicial Sales, Sec. 33. There are decisions contra among them being *Froneberger* v. *Lewis*, 79 N. C. 426 and *Charles* v. *Daniels*, 131 S. W. (Ky.) 42.

There is another line of cases which uphold the principle, "That a trustee may purchase the trust property at a judicial sale brought about by a third party, which he had taken no part in procuring, and over which he could not have had control." *Allen* v. *Gillett*, 127 U. S. 596. Other cases supporting this view are: McMann's Estate, 14 Pa. County Court Repts. 379; *Dexter* v. *Harris et al.*, Case No. 3,862, 7 Fed. Cases page 612; *Dillinger* v. *Kelley*, 84 Mo. 561; *Hess et al.* v. *Voss*, 52 Ill. 472; *Starkweather* v. *Jenner*, 27 Dist. of Col. Appeal Cases 348; *Calvert* v. *Woods*, 92 Atl. (Pa.) 301; *Steinbeck* v. *Bon Homme Mining Co.*, 152 Fed. 333; *Clark* v. *Holland*, 33 N. W. (Iowa) 351; and *Barber* v. *Bowen*, 47 Minn. 118. Under the rule just set out, if the creditors of the decedent's estate had appealed to the court to sell the land in controversy, they being third parties, the administrator could have purchased at the judicial sale, and we see little, if any, distinction in his asking the court to judicially consider the matter of the sale of the decedent's realty and a creditor so

petitioning the court. The mere fact that the administrator is instrumental in instituting the suit should not under our law take him without the spirit of the above quoted rule. He is not the trustee of the real estate of his decedent, and has no control over it, and the judicial determination of the necessity for a sale and the sale itself are entirely under the control of the court.

We believe the rule in regard to the purchase by Joel McGraw, administrator, is largely governed by the principle laid down in the case of *Cooley* v. *Cooley's Heirs* et al., 37 S. W. (Tenn.) 1028, where the court said:

"The next assignment of error is that the sale is void because the administratrix had no legal right to purchase ·at the sale. We have already considered this in another connection. We need only add that, while an administrator could not lawfully purchase at a sale of personalty of the estate made .by himself, that being under his control, the same rule does not apply with regard to realty. He has no power to sell the realty. The sale is not his. It is made by the court, and he can lawfully bid. Of course, owing to his connection with the sale, in bringing it about, the court, upon a proper case made, will look narrowly into his conduct, and will look with a jealous eye into any charge of fraud made on a proper proceeding. But there is no absolute incapacity to buy, and the mere fact of the administrator having bought at the sale of the land is not a matter for assignment of error upon a petition for a writ of error."

Joel McGraw, administrator, was a lawful purchaser, and while, because of the fact that as administrator he instituted the suit resulting in the court's decree of sale, his conduct will be closely scanned, that fact alone did not disqualify him from becoming a purchaser at the judicial sale. The fact that he was also a creditor of the estate tends to strengthen his position. Under the evidence, we cannot see that by reason of his fiduciary relation he has gained any advantage over those entitled to be protected from any breach of his fiduciary duty. This sale was fairly conducted and he paid an adequate price for the land at the time it was sold.

Appellees contend that the existence of such an exception to the general rule has not been recognized in this State, citing *Newcomb* v. *Brooks,* 16 W. Va. 32; *Ayers* v. *Blair,* 26 W. Va. 558; *Walker* v. *Ruffner,* 32 W. Va. 297; *Wians* v. *Wians,* 22 W. Va. 678. While in some of these decisions there are dicta tending to support this contention, an examination reveals the fact that in none of them was there directly involved the question as to whether or not where the sale of a decedent's real estate for the payment of debts is made pursuant to a decree of the court by a special commissioner or other agent appointed by the court, a fiduciary such as an administrator who has no control over the decedent's real estate or control over the sale, has the right and privilege of purchasing the property so sold. Moreover, if we were disposed to rest the decision of this case upon indirect decisions of this court, it may be that we would regard the dictum in the case of *Ash* v. *Wells,* 76 W. Va. 711, as being as equally persuasive. Judge Poffenbarger, in *Ash* v. *Wells, supra,* said:

"The situation of the executor at the time of the conveyance did not bring him within the exception to the general rule inhibiting a trustee or other person standing in a fiduciary relation from purchasing the trust subject at his own sale. His relation of legatee and creditor might have justified his bidding on the property at a sale made under a decree or other judicial proceeding on the ground of his interest and right to protect the same. As such sales are made under the supervision of the courts, in causes to which the cestuis que trustent are parties, the danger of injury to them by means of fraudulent or inequitable conduct on the part of the trustees is very slight. For that reason the courts in some jurisdictions distinguish such sales, as regards the right of a trustee to purchase, from those made by the trustees themselves, upon their own terms and at times, places, and prices fixed by them. Purchases by trustees at sales of the former have often been upheld. *Frazer's Executors* v. *Lee* 42 Ala. 25; *Penny* v. *Jackson,* 85 Ala. 67; *Jones* v. *Webb,* 22 Ky. L. Rep. 1100; *Bryant* v. *Jackson,* 99 Mo. 858. Even in such case, the better and safer practice is to obtain leave from the

court, to bid at the sale. *Froneberger* v. *Lewis*, 79 N. C. 426;
*Armor* v. *Cochrane*, 66 Pa. 308. The apparent sale in this
case was not judicial nor even public. Nobody had any op-
portunity to supervise it or test its fairness. Some of the
beneficiaries of the will may have obtained knowledge of the
conveyance, soon after the sale was made, but none of them
were previously consulted or advised of the intent to make it."

The decree of June 25, 1923, setting aside and cancelling
the deed from Childers, Special Commissioner, to Joel Mc-
Graw and the subsequent deeds made thereunder, will be
reversed, and the bill dismissed.

*Reversed; bill dismissed.*