# CHARLESTON.

## ASH v. WELLS, EXECUTOR et als.

Submitted September 14, 1915.    Decided October 5, 1915.

1. EXECUTORS AND AMINISTRATORS—*Conveyance of Realty—Power of Executor.*

    His interest in the estate of the testator, as legatee and creditor, does not authorize the executor of a will giving him a power of sale of the real estate of which the testator died seized, to convey any portion thereof directly or indirectly to himself, in satisfaction of any debt the estate may owe him.    (p. 712).

2. TRUSTS—*Express Trust—Laches.*

    Though laches will run against an express trust, courts of equity apply the rule, in such cases, less readily than in cases of constructive trusts, and rarely ever do so, unless the circumstances disclose a defense in the nature of estoppel, such as intervention of the rights of third persons, loss of evidence, death of parties and witnesses, settlement or disavowal of the trust, acquiesced in by the *cestui que trust,* or the like.    (p. 714).

3. EXECUTORS AND ADMINISTRATORS—*Conveyance to Self—Setting Aside.*

    In setting aside a conveyance of trust property, made by an executor to himself, professedly in satisfaction of a debt due to him from the estate, and decreeing a sale of the land, the court should provide for the payment of such debt, if any, out of the proceeds of the sale; but not until the debt shall have been established by proper evidence.    (p. 715).

4. SAME—*Conveyance of Property—Setting Aside—Debt—Evidence.*

    In such case, the executor's sworn statement that the estate was indebted to him at the time of the conveyance, supplemented by a copy of an *ex parte* settlement showing, among other things, credits taken as for payments of such debts to himself, is not sufficient evidence thereof.    (p. 715).

Appeal from Circuit Court, Tyler County.

Suit by Zadok Ash against Alpheus C. Wells, executor, etc., and others.    From decree for complainant, the executor appeals.

*Affirmed in part    Reversed in part.    Remanded.*

*M. K. Duty,* for appellant.

*J. V. Blair,* for appellee.

POFFENRARGER, JUDGE:

Alpheus C. Wells, executory of the will of Alf Conaway, deceased, having the power of sale of the testator's real estate, by virtue of a provision of the will, indirectly conveyed to himself the homestead, known as the Joseph's Mills place, containing 56 3/4 acres, at a valuation he fixed upon it, charged himself with the amount of such valuation, took his commission on the same and credited the supposed purchase price on alleged debts due to himself from the estate. At the instance of Zadok Ash, assignee of some of the legatees and devisees of the will, this conveyance was set aside and the land decreed to be sold. Allowing Wells the amount with which he had charged himself in his settlements, on account of the tract of land, $2,800.00, interest thereon from the date of the deed, taxes paid by him and interest thereon and $700.00 for enhancement of value by improvements, and charging him with 28/35 of the rental value of the land, the court adjudicated a balance of $3,837.30 in his favor and directed payment thereof out of the proceeds to be derived from the sale of the land under the decree. Wells appealed from the decree and Ash has cross-assigned errors.

The principal part of the estate was agricultural land, the appraised value of which was something less than $15,000.00. Specific legacies amounting to more than $12,000.00 were provided for by the will, and the estate was to some extent indebted. Having directed the payment of his indebtedness and the specific legacies, the testator empowered the executors to sell all of the personal property not previously disposed of and authorized them to take full possession and control of the real estate, to let and lease it for farming, grazing and oil and gas purposes and to sell and convey it upon such terms and conditions as they might deem best. Out of the rents and the proceeds of the sale of the real and personal property, they were directed to pay the debts, expenses and legacies, and the residue was given, in equal shares, to his three nephews, A. J. Wells, Emery E. Wells and Alpheus C. Wells, and his nine natural children, Addie L. Conaway, William E. Connaway, Alfa Conaway, Ora A. Conaway,

Benjamin W. Conaway, Elsie Conaway, Cheslie Conaway, Ray Conaway and Roy Conaway.

The testator died March 21, 1903. By a deed dated Nov. 5, 1904, Alpheus C. Wells, the executor of the will and also a beneficiary thereof and creditor of the estate, conveyed the homestead to J. F. Ferrell, for a recited consideration of $2,700.00. On the 7th day of February 1905, Ferrell conveyed it to Wells by a deed reciting a consideration of $2,800.00. Wells frankly admits in his answer, as well as in his testimony, that the purpose of these deeds was a transfer of the property to himself, in satisfaction of indebtedness due him from the estate. He does not pretend or claim the land was actually sold to Ferrell, but he denies any fraud or wrongful intent in the transaction. In the settlements he made, he charged himself with $2,800.00, on account thereof, but offset this charge by credits for payments of debts to himself. No part of the $2,800.00 was actually included in the payments made to beneficiaries. The money they received actually came wholly from other sources. But, if the estate owed the executor, they got the benefit of the $2,800.00, for, in that case, the money they got would have been applied on his debts, if he had not treated the land as satisfaction thereof. In 1907, the Conaway children received from him $200.00 each and, in 1908, $150.00 each. By an agreement dated November 30, 1910, six of them, William E., Ora A., Benj. W., Elsie, Cheslie and Roy Conaway, for and in consideration of $340.00 each, assigned and transferred their respective interests in the estate to Zadok Ash, and by a like instrument, dated December 23, 1910, Auddie L. Netzer, another one of them, assigned and transferred her interest to him.

The situation of the executor, at the time of the conveyance, did not bring him within the exception to the general rule, inhibiting a trustee or other person standing in a fiduciary relation, from purchasing the trust subject at his own sale. His relation of legatee and creditor might have justified his bidding on the property at a sale made under a decree or other judicial proceeding, on the ground of his interest and right to protect the same. As such sales are made under the supervision of the courts, in causes to which the *cestuis que trustent* are parties, the danger of injury to them, by means

of fraudulent or inequitable conduct on the part of the trustees, is very slight. For that reason, the courts in some jurisdictions distinguish such sales, as regards the right of a trustee to purchase, from those made by the trustees themselves, upon their own terms and at times, places and prices fixed by them. Purchases by trustees, at sales of the former class, have often been upheld. *Frazer's Executors* v. *Lee*, 42 Ala. 25; *Penny* v. *Jackson*, 85 Ala. 67; *Jones* v. *Webb*, 22 Ky. L. Rep. 1100; *Bryant* v. *Jackson*, 99 Mi. 585. Even in such case, the better and safer practice is to obtain leave from the court, to bid at the sale. *Froneberger* v. *Lewis*, 79 N. C. 426; *Armor* v. *Cochrane*, 66 Pa. 308. The apparent sale in this case was not judicial nor even public. Nobody had any opportunity to supervise it or test its fairness. Some of the beneficiaries of the will may have obtained knowledge of the conveyance, soon after the sale was made, but none of them were previously consulted or advised of the intent to make it.

Laches, the only other defense interposed that is worthy of consideration, is not sustained by the facts and circumstances. The evidence discloses no personal accounting between the executor and the legatees. All the latter ever knew about the condition of the estate seems to have come from sources other than the executor. There is no proof that they received the money he paid them, with any actual notice from him, of the sources from which it had been derived. The *ex parte* settlement made by him in June, 1905, disclosed the charge and credits, on account of the land transaction now in question, and that settlement may have been constructive notice to the beneficiaries, but it was not actual notice. But, if such knowledge on their part were shown, it alone would not constitute laches. It must be supplemented by other facts, showing intention to relinquish or abandon the right, or constituting an estoppel. The delay in the attack upon the transaction has not been unusually long. No payment seems to have been made on account of the bequests, until 1907 and 1908. The assignments were made in the year 1910. The *ex parte* settlements made after the payment of bequests did not purport to be final and complete, and no such settlement seems ever to have been made. Apparently, the administration as a whole is still incomplete. No very considerable change in

the condition of the property has occurred, and no material witnesses have died. The circumstances, therefore, afford no ground for the application of the doctrine of estoppel. Nor does the conduct of the injured parties raise any presumption of intent on their part, to relinquish or abandon such rights as they had. It must be remembered too that this is an 'express trust, under which the trustee is held by the law to a more rigid and scrupulous performance of duty than are trustees in constructive trusts. This conclusion, respecting the defense of laches, is fully sustained by principles announced in *Roush* v. *Griffith*, 65 W. Va. 752.

The cross-assignment of error, respecting the statement of the account between the estate and the executor, arising out of this transaction, is well taken. That portion of the decree assumes the existence of the alleged indebtedness of the estate to him, which he has treated as consideration for the land. The error in this comes from lack of sufficient proof of such indebtedness. No note or other documentary evidence of it has been produced here. As to this claim, the decree stands upon nothing but Well's statement under oath, that the estate was indebted to him to the extent of $2,800.00 and the presumption of correctness of his *ex parte* settlement. That settlement has not been pleaded, and is still open to attack by a bill to surcharge and falsify it. The decree in its present form makes the settlement conclusive as to the alleged debt, in the absence of pleadings or proof. In this suit, the existence of the indebtedness is not material to the main issue, the validity of the deed, for it was voidable whether the indebtedness existed or not. But it becomes material now. If there is such a debt, it should be paid out of the proceeds of the land. The plaintiff must do equity, and it is equitable to pay out of the proceeds, any just debt the defendant may have against the estate, for which he held the land. He should be accorded a lien on it, for the amount thereof. To leave it unprovided for in the decree might result in the loss thereof by reason of the statute of limitations. Having held the land for the debt and so neglected to pay it out of money he could have used for the purpose, his hold upon it to such an extent as to make that debt, if any, secure, ought to continue, and must do so, if the final result is to be equitable and just. But

the allowance of the claim in the present state of the evidence may do rank injustice to the plaintiff, for the requisite issue has been neither made nor tried. The question of interest is necessarily a dependent one, wherefore it cannot properly be determined now. After these matters are properly and finally settled in this suit, the *ex parte* settlements can be reformed, without judicial aid, so as to eliminate the items in them relating to the alleged debt and the charges made in it on account of the value of the land, since they are all separable. Nor is it necessary, in this suit, to reform the settlements. The effect of the decree here as to certain items may be subsequently carried into it. No basis for the apportionment of the rents, issues and profits, made by the decree, is disclosed. The cause should be referred to a commissioner for inquiries and findings as to the alleged debts and interest and the rents and profits and apportionment thereof and the value of the improvements.

In so far as the decree sets aside and annulls the two deeds from which relief was sought, orders a sale of the land and awards costs to the plaintiff, it will be affirmed and in all other respects reversed, and the cause remanded.

*Affirmed in part. Reversed in part. Remanded.*