# CHARLESTON.

## P. D. MORRIS, ADM'R. v. ANITA WESTERMAN et al.
### AND CONSOLIDATED CASES.

Submitted January 16, 1917.    Decided January 30, 1917.

1. HUSBAND AND WIFE—*Wife's Gift to Husband—Forbearance.*

    A gift or relinquishment by a married woman to her husband, of a general or residuary money legacy, given to her from an estate, by the will of a deceased person, and held by her husband as executor of the will, cannot be inferred from her mere forbearance to demand and enforce payment thereof, from her husband acting as executor, and her silence and failure so to do, with knowledge of his appropriation to his own use, of the assets of the estate, including her legacy.   (p. 506).

2. EXECUTORS AND ADMINISTRATORS—*Husband's Duty as Executor—Wife's Interest in Estate.*

    The duty imposed by law, upon a husband acting as the executor of an estate in which the wife is interested as the donee of money, vests in her a right of even higher dignity and character than the obligation imposed upon him by his mere promise or agreement to repay money borrowed from her separate estate; and he cannot relieve himself of the sacred and solemn duty so imposed, by his own misconduct silently submitted to by the wife.   (p. 507).

3. SAME—*Husband's Appropriation of Wife's Legacy—Claim—Estoppel.*

    In such case, the wife is not precluded, in the interest of the husband's general creditors, from assertion against his estate, after his death, of her claim for an accounting and settlement as to what was due her from the estate upon which he administered, by the doctrine of etsoppel.   (p. 507).

4. SAME—*Legacy—Claim Against Administrator De Bonis Non.*

    If, in such case, the wife preceded the husband in death and he qualified as her administrator and, as such, failed to reimburse her estate, and his administration was terminated by his death, the amount due from him as executor of the first estate is an unadministrated asset of the wife's estate, and may be recovered by her administrator *de bonis non.* But, as to the estate to which the fund originally belonged, it is an administered asset, and cannot be recovered by the administrator *de bonis non,* with the will annexed, of the first estate.   (p. 514).

5. SAME—*Claims—Preference—Statute.*

    By virtue of sec. 25, of ch. 85, of the Code, such a debt is entitled to preference over the general debts of the deceased personal

representative, in the distribution of the proceeds of such estate of his as is not required for the discharge of liens acquired in the modes prescribed by law, and of his interest in any partnership property after the payment of the social debts.   (p. 514).

6.  SAME—*Forbearance of Claim—Preference—Statute.*

The inaction or forbearance of the wife to assert her right against her husband acting as executor of the estate in which she is so interested, with knowledge of his conversion of the executorial estate to his own use, does not deprive her estate of the benefit of the preference so given.   (p. 514).

7.  HUSBAND AND WIFE—*Wife's Gift to Husband—Bank Stock.*

Shares of the capital stock of a bank, belonging to an estate of which the husband is executor, transferred on the books of the bank to the wife and then assigned by her to her husband, and transferred to him on the books of the bank, and subsequently treated as his own, with her knowledge, are deemed, in the absence of clear proof to the contrary, to have been a gift from her to him.   (p. 515).

8.  BANKS AND BANKING—*Loan on Capital Stock—Collateral—By-Law.*

A bank organized under a law which impliedly sanctions loans by it on shares of its own capital stock, as collateral security, by providing that such loans shall not exceed fifty per cent of such capital stock, can make and enforce a by-law providing that no stockholder will be permitted to sell, transfer or assign his or her stock, while indebted to the bank, and a loan made by it to one of its stockholders holding certificates of stock reciting such by-law, are valid liens on the shares held by him.   (p. 515).

9.  SAME—*Loans—Statutes—Retroactive Effect.*

A statute subsequently passed, prohibiting banks from making loans on shares of their capital stock, as collateral security, does not invalidate a lien on shares, so previously acquired.   (p. 515).

Appeal from Circuit Court, Wetzel County.

Suits by P. D. Morris, administrator, against Anita Westerman, and against W. P. Simmons and others, and by D. V. Lemon, trustee, etc., against the First National Bank of New Martinsville and others, and by W. P. Simmons, surviving, partner, etc., against P. D. Morris, administrator, and others, and C. S. Farmer, administrator de bonis non of Beulah Westerman, deceased, and as administrator de bonis non with the will annexed of W. S. Wiley, deceased.  De-

cree for complainant P. D. Morris, administrator, and C. S. Farmer, administrator, etc., appeals.

>*Reversed in part.   Affirmed in part.   Remanded.*

*A. C. Chapman* and *McCamic & Clarke,* for appellant.

*Hall & Hall,* for appellee First .Nat. Bank of New Martinsville.   *Edwin O. Keifer,* for appellee Wetzel County Bank.   *M. H. Willis,* for appellee P. D. Morris, Adm'r. etc. *M. R. Morris,* for appellees New Martinsville Supply Co. and Rowland & Meisenhelder.

POFFENBARGER, JUDGE:

The principal complaint against the decree appealed from is its denial of the claim of title to the major portion of the subject matter of the main suit, *Morris, Adm'r.* v. *Westerman et al.,* set up by Farmer, the administrator *de bonis non* of Beulah Westerman, the deceased wife of plaintiff's decedent, on the ground that it was a residuary legacy belonging to her, in the hands of said decedent, at the time of his death, as the executor of her father's will.   Farmer asserted this claim in a second capacity also; viz., administrator *de bonis non* with the will annexed of W. S. Wiley, deceased, the father of the deceased wife.   The suit was brought against the heirs and creditors of Westerman, to subject his real estate to the payment of his debts, the personal property being insufficient to pay them, and to settle up his estate. Farmer, administrator, was admitted on his petition, as a defendant claiming the property to be unadministrated assets of the Wiley estate and of the estate of Westerman's deceased wife.   For hearing and determination, three other suits involving property and relations in which Westerman had been interested were consolidated with the suit brought by Morris, administrator, the evidence taken once for all of them and one final decree entered.   Two of the other suits were brought to settle the business of a partnership between Westerman and W. P. Simmons, and the third to obtain advice and instruction from the court, as to the distribution of a trust fund in which Westerman had held an interest.

There is no controversy of any consequence, as to the facts. On Jan'y. 22, 1903, C. G. Westerman qualified as the executor of the will of W. S. Wiley, without bond, agreeably to a provision of the will, naming him as the executor. Wiley had left a considerable estate all of which, except some specific devises and legacies, went to his daughter, Beulah Wiley, who was then the wife of C. G. Westerman or soon afterwards became his wife. He made no inventory of the estate, caused no appraisement to be made, never made any settlement thereof, and never delivered or set over to his wife the property and bonds now in controversy. He resided in the home of Wiley, at the time of the death of the latter, and continued to reside there, until the time of his death. Of that property, he made no disposition. He caused to be transferred to his wife a portion of the bank stock her father owned. She died intestate, late in 1909, or early in 1910, and her husband qualified as her administrator, but he did not charge himself with any of the property in controversy, as such. Property of hers, including the bank stock transferred to her, was appraised at $16,452.50, the bank stock being the principal item. He died intestate, Febr'y. 8, 1912, leaving five children ranging in age from two to twelve years, and property was appraised, as belonging to his estate, at the sum of $49,085.94.

At the time of the death of Wiley, Westerman had no property. It has been shown, on a reference to a commissioner, that he received from the estate of Wiley, at various times, in addition to the bank stock he transferred to Mrs. Westerman, amounts aggregating $51,383.65, and disbursed for repairs on the residence, satisfaction of small bequests made by the will, debts due from the estate, funeral expenses, taxes, insurance and medical and hospital bills of the widow, sums amounting to $9,128.33, leaving $42,255.32. For a time, he kept two bank accounts, one executorial and the other individual, but in making his deposits, he did not regard the sources from which the money had been derived. In numerous instances, he divided funds of the estate between the two accounts and made deposits in both, and drew checks on them indiscriminately. He engaged extensively in oil and gas production, trading and speculation and other business, using for

such purposes, the estate that had come into his hands, as executor of Wiley's will, for the benefit of his wife as residuary legatee. He created large indebtedness in these enterprises, occasioning the execution to banks and individuals, of many notes, some of which the wife endorsed. She must have known he had not fully accounted to her for her interest in the estate and that he was making use of the same as if it were his own, for he had commenced these operations without means of his own.

The commissioner to whom the cause was referred reported indebtedness of the estate of C. G. Westerman to the estate of Beulah Westerman, in the sum of $28,433.40, two-thirds of the amount traced into his hands and undisbursed, the other third being deducted as having vested in him as a distributee of his wife's estate. Sustaining numerous exceptions to this finding, filed by creditors and Morris, administrator, the court held there was no such liability and decreed that the property in question belongs to the estate of C. G. Westerman and is liable for his debts. Farmer, administrator, also excepted to the allowance of a distributive share to the husband's estate, on the ground that the wife never became legally possessed of the property in her life time. Though this exception became unimportant, for the purposes of the decree, in consequence of the disposition of the others, the court overruled it.

But for the statute making the legacy of Mrs. Westerman her sole and separate property and rendering it immune from the control of her husband and liability for his debts, Code, ch. 66, his acts and conduct respecting the same, after it came into his hands as executor, might have been sufficient to make it his own, by reduction thereof into possession, on common law principles. *Lynn* v. *Patton*, 10 W. Va. 187; *Clark* v. *King*, 34 W. Va. 631; *Marcum* v. *Hudnall*, 14 Gratt. 369; *Yarby* v. *Lynch*, 3 Gratt. 460; *Blakey* v. *Newby*, 6 Munf. 64; *Wallace* v. *Taliaferro*, 2 Call. 447. That statute, however, has cut up this old common law doctrine by the roots. It makes all real and personal property of any female, which she shall own at the time of her marriage, and all property she may, after marriage, acquire by inheritance, gift, grant,

devise or bequest, from any person other than her husband, as thoroughly immune and secure from her husband's control and from liability for his debts as an equitable separate estate, if not more so. Under it, her property cannot become the property of her husband, otherwise than by her voluntary sale, barter or gift thereof to him. The equitable separate estate of a married woman, the creation and possession of which were permissible, before the passage of this statute, was a thing of substance, not of mere form. As to it, a married woman was regarded as a *feme sole* and had right to dispose of all her separate personal estate, and the rents, issues and profits of her real estate, in the same manner as if she had been a *feme sole,* unless the power of alienation was restrained by the instrument creating such estate. *Radford* v. *Carwile,* 13 W. Va. 572. One of the effects of the statute was enlargement of the rights and powers of married women so as to enable them to take separate legal estate in real and personal property. *Radford* v. *Carwile,* 13 W. Va. 572; *Patten* v. *Bank,* 12 W. Va. 587. The policy of this statute passed in 1868, has been greatly enlarged and extended by later acts conferring upon the married woman, among other things, right to maintain in her own name all suits and proceedings necessary for the protection and vindication of her property rights. Her powers respecting her statutory separate estate are, therefore, much more extensive than were those pertaining to her separate equitable estate. Hence, the property bequeathed to Mrs. Westerman by her father became hers by a good, sound and substantial title. Her relation to the executor did not limit or qualify it in the slightest degree.

During the period of six or seven years, intervening between the death of W. S. Wiley and the death of Mrs. Westerman, the latter merely acquiesced in the acts and conduct of her husband, the executor, and did no positive act indicating intention to part with her title or relinquish her right. If she was cognizant of his use of the property belonging to her, for his own purposes and in his own business, the most that can be claimed is that she remained passive, made no protest and did not endeavor to bring him to a settlement and payment of what was due her. There is no evidence of any

affirmative act of gift. Her property was in her husband's hands as executor. It came to him in due course of law, not by any act of hers. Though, with her knowledge, he used it in a manner not in conformity with law and in violation of her legal right, there is no evidence, that by any act of hers, the status or character of the property was ever changed. If it had once been in her hands and subject to her absolute control, and she had then placed it in the hands of her husband or permitted him to take charge of it and use it as his own, there would be a presumption of a gift on her part, in favor of his creditors, which it would be necessary for her to overcome with proof of the relation of debtor and creditor between herself and her husband, in order to prevail over them. *Crumrine* v. *Crumrine,* 50 W. Va. 226; *Bank* v. *Atkinson,* 32 W. Va. 203. But, in as much as her property and funds went into his hands, in his capacity of executor, and did not come from her hands at all or by any act of hers, this presumption cannot consistently be indulged. She never delivered or relinquished her property to him, for it was never in her possession. It came to him in the character of executor and he, instead of performing his duty as such and delivering it over to her, converted it to his own use. Of course she could have demanded an accounting from him, but her failure to do so does not necessarily signify intention willingly to acquiesce in such use or to relinquish her right. If she had not been his wife, such acquiescence would not have the slightest tendency to prove a relinquishment or abandonment of right. The delicate relation subsisting between the parties may have constituted the reason for an unwilling acquiescence unaccompanied by even the slightest intention to make a gift of the property. If she had had the property in her possession or the title in her name and within her control and delivered or conveyed it to him, or permitted him to take possession of it, without any understanding or agreement for return thereof, there would have been a presumption of a gift. *McGinnis* v. *Curry,* 13 W. Va. 29, 64, 65. But, if, under such circumstances, he had contemporaneously given her his note or other obligation for the money or the value of the property, or even verbally promised to pay or return it,

no such presumption would have arisen. The transaction would have created the relation of debtor and creditor. In most instances, however, if not all of them, the verbal agreement is rejected, for want of sufficient proof, or inconsistency with conduct. *McGinnis* v. *Curry,* cited; *Crumrine* v. *Crumrine,* cited; *Bank* v. *Atkinson,* cited. But, if the relation of debtor and creditor is established, the wife's acquiescence in the husband's use of the money or property as his own, cannot consistently be regarded, deemed or treated as a transfer of her right by gift. She cannot be both donor and creditor at the same time. The two relations are logically and legally incompatible. If the wife's separate estate or the profits thereof go into her husband's hands, upon such an assurance or promise, it is a debt against his estate. *Roper et als.* v. *Wren, Adm'r.,* 6 Leigh 38; *McGinnis* v. *Curry,* 13 W. Va. 29, 68; *Graybill* v. *Mayer,* 45 Pa. St. 530; *Kaufman* v. *Whitney,* 50 Miss. 103. A conveyance made to a wife by the husband, in the absence of fraud and for a valuable consideration, such as money of her separate estate or her inchoate right of dower in land, is everywhere upheld against creditors as well as between themselves, though such a conveyance in consideration of antecedent indebtedness, would obviously be voidable, under the statute, at the suit of creditors, to the extent of the preference created in her favor. Though the wife's mere acquiescence in the husband's possession and use of her pin-money and profits arising from her equitable separate estate, or her mere failure to demand payment thereof, when entitled to them, precluded right of recovery thereof from his estate, (*Moore* v. *Ferguson,* 2 Munf. 421; *Ridont* v. *Lewis,* 1 Ark. 269; 1 Eq. Cas. 140, p. 7, *Peacock* v. *Monk,* 2 Vez. Sr. 190; *Townsend* v. *Windham,* 2 Vez. Sr. 1, 7, *Parker* v. *Brooke,* 9 Vez. Jr. 583) such conduct seems not to have precluded assertion of her right to the principal sum constituting her separate estate. This distinction is perfectly clear, if the separate estate is regarded as having been intended as a mere provision for her comfort and support, which she was deemed to have demanded as she needed it, and not to have demanded at all, if her requirements were satisfied by her husband or from some other source, although

her strict right to demand them as such in full, could not be denied. In *Parker* v. *Brooke,* cited, a purchaser of a wife's separate estate from the husband, with notice of her title, was required to account for it in full, the court declining to apply the rule applicable to arrears of pin-money or profits arising from the separate estate. In a similar manner, the distinction was made in *Powell* v. *Hankey,* 2 P. Wms. 82 and in *Towers* v. *Haynes,* 3 Whar (Pa.) 48.

These illustrations afforded by the decisions reveal the substantial character of the wife's separate estate and the intricacy of questions arising out of transactions between her and her husband concerning it. The statutory separate estate and the equitable separate estate differ principally in respect of the nature of the title, the mode of creation and the remedies incident thereto. Hence, statutory separate estate may be disposed of by gift as readily as equitable separate estate, and any circumstance sufficient to rebut the presumption of a gift in the one instance suffices in the other. As mere acquiescence in the husband's possession and use of equitable separate estate was not deemed a gift thereof, though it might be so regarded as to the profits arising from its use, it cannot consistently be so regarded in the case of statutory separate estate. Since a promise or agreement to repay money of the equitable estate, borrowed, creates the relation of debtor and creditor, and precludes the possibility of a gift, it must do so in the case of a loan of money belonging to a statutory separate estate. In view of the ease with which the presumption of gift may be rebutted or avoided, it cannot be deemed to have arisen, when the husband has obtained possession as executor or administrator. The duty to account for and pay over the estate, to the wife, is manifestly as high in dignity as his promise to reimburse her for money or property obtained from her on such promise. Indeed, it is higher. He is a fiduciary held by law to a strict and drastic accounting. As to his liability to her, on his receipt of assets, there can be no question. It arises independently of any agreement or understanding between them. He neither receives nor holds it in his individual capacity. Even at common law, it remained hers, until he reduced it into possession, by exercise of do-

minion over it in his individual capacity. Now, he cannot elect so to hold it. By withholding it or making a wrongful disposition of it, he can only violate his duty. Her silence, with knowledge of such wrong, is not a decisive nor a clear index to her intention. By no affirmative act, does it pass to him either the title or the possession. She merely acquiesces in a wrongful use, for some reason not expressed. The same thing might occur in the case of a fully proven loan. The money might be long past due and she fully armed with remedies for its recovery. Would she be denied her right merely because credit has been extended to him by others in ignorance of the debt? Our decisions and uniform authority in other jurisdictions impliedly answer in the negative. They go to the inception of the transaction and, at that point, determine its character, and, if it is shown then to have been a loan, the wife's right is admitted, notwithstanding her indulgence of her husband as her debtor, and her subsequent conduct is ignored, however prejudicial it may have been to other creditors, by reason of the secrecy of the loan. Mere indulgence of a debtor has never been deemed a gift, although actual delivery of money or property is not essential to a gift. *Miller* v. *Neff*, 33 W. Va. 197. In that case, it was held that, if the subject of the gift is in the possession of the donee as agent of the donor, proof of a declaration of the gift by the donor and subsequent dominion and use of the subject were sufficient to pass the title. But the property in question here was not held by the agent of the wife, nor is there any evidence of a declaration of gift. No doubt a gift may be inferred from the conduct of the parties, *McDonald* v. *Crockett*, 2 McCord, Eq. 130; 20 Cyc. 1194, but the circumstances must be such as to put the question of intention beyond reasonable doubt. In New York, it has been held that, in the case of a gift from a wife to her husband, the burden of proof is on the latter to show it by clear evidence. *Boyd* v. *De La Montagnie*, 73 N. Y. 498. In Pennsylvania, the husband's mere possession of the wife's property is not evidence of a gift. He is presumed to hold it as her debtor or trustee. *Graybill* v. *Moyer*, 45 Pa. St., 530; *Wormley's Estate*, 137 Pa. St., 101. Upon these principles and conclusions, we are of the opinion

that a gift of Mrs. Westerman's estate to her husband has not been established, and the inquiry next in order is whether she is estopped by her conduct, from assertion of her right.

As to her personal property, a married woman is subject to the operation of the doctrine of estoppel *in pais*. *Williamson* v. *Jones,* 43 W. Va. 562, 578; *Smilie's Estate,* 22 Pa. St. 134. In the numerous cases in which the courts assert generally that, by permitting her husband to use and manage her separate property and thus conferring on him indicia of ownership, inducing third persons to extend credit to him on the faith of his ownership, a married woman may be estopped to claim the property as her separate estate, against the husband's creditors, 13 R. C. L. p. 1165; but the facts and circumstances disclosed here do not bring this case within the classes to which the doctrine has been applied. Most of them are similar in their facts to *McGinnis* v. *Curry,* and *Crumrine* v. *Crumrine,* to which reference has been made. Others involved false representations of the wife, acted upon by third persons to their prejudice, not mere acquiescence. Here, there is no effort to resist the claims of creditors against any specific tangible property real or personal, formerly owned by the husband and fraudulently conveyed to the wife. The cross-bill answer asserts a debt due in a fiduciary capacity. Mrs. Westerman never had legal title to the property of the estate of her father, not accounted for or paid to her. The will gave her fifty shares of the stock of the Wetzel County Bank and some of the testator's personal effects. Some of the real estate was given to two nephews. Six additional shares of bank stock were specially disposed of. The executor was required to sell all of the other property and distribute the proceeds to designated legatees. Hence, strictly speaking, the wife never placed any of her property in the executor's hands, nor permitted him to use it, in such manner or under such circumstances, as would induce any person to believe it was his. Technically, the property belonged to Wiley's estate, not to the wife, but there was a liability upon the executor in her favor, respecting it, which she never released and there is no proof of a representation to any creditor or any one else, that she had released it.

The statute, Code, ch. 85, sec. 25, gives this debt preference over the general indebtedness of the deceased executor, and thus works serious disadvantages to general creditors. If the residuary legatee had been a stranger to the executor and had forborne suit to compel a settlement and enforce payment, the result would have been the same. Had the executor contracted, in his individual capacity, enormous simple debts, and so burdened his estate that it would pay only a few cents on the dollar, his creditors would have been hurt in a similar manner. In that case, their complaint that the debts were secret and unknown to them, would have availed nothing. To inflict upon a wife loss of money due her from a personal representative, for her failure to sue for it, on the ground that her husband has used it to the detriment of creditors, would subject her to a rule of law not applied to other persons. To estop her because undue credit has been extended to her husband, in ignorance of the debt due her, would be a plain and flagrant discrimination against her, founded upon nothing except her marital relation, since the secrecy of debts due other people has no such effect. Moreover, if the laws requiring recordation of deeds, liens, etc. are intended for the benefit of traders and dealers on mere personal credit, as some courts seem to hold, the county records disclosed enough to put any prudent man upon inquiry and hence this debt was not a secret one. They disclosed the will, the appointment and the lack of an inventory, appraisement and settlement, and, hence, an undischarged liability of high character. Such records are not constructive notice to general creditors, *Gilbert* v. *Peppers,* 65 W. Va. 355, 364, binding upon them as matter of law, but they are available sources of information. As to this debt, persons dealing with the executor and extending individual credit to him, were under the duty and assumed the risk that attend their dealings with other persons, on mere personal credit. In all such cases, they are aware of the danger and know the law has made no provision for their protection. They may, under some circumstances, avail themselves of the doctrine of estoppel when they have extended credit, relying upon the debtor's known possession of property as evidence of title, but almost daily

experience tells them it is unsafe to deal with a man on the assumption that he owes no debts. There is no legal presumption that he owes none. No law requires him or his creditors to record them.

This asset of the wife's estate belongs to the administrator *de bonis non*. Its status remains wholly unaltered. His predecessor never collected it, nor disturbed its condition in any respect. It never came into his hands as administrator. He owed it to her estate as executor of Wiley, at the time of his qualification as her administrator, and, not having collected it, nor altered its status, he left it an unadministered asset of her estate. As an asset of the estate of Wiley, it was administered. The executor improperly disposed of the property and was liable directly to the legatee for a devastavit. For this reason, the administrator of Wiley *de bonis non* with the will annexed, is not entitled to sue for it. *Brown* v. *Brown*, 72 W. Va. 684. As administrator of his wife, Westerman should have collected the wife's claim against himself. It was a debt he owed, not property in his hands, and he neither paid it nor in any way discharged it. Hence, it is necessarily an unadministrated asset of her estate.

Though the action of the court in sustaining the commissioner's allowance to the husband's estate, of his distributive share of the amount recoverable from his estate, on the ground of his liability as executor of the will of Wiley, is made the ground of an assignment of error, nothing is said in the brief in support of the assignment; wherefore it may well be deemed to have been waived. However, it may be said, with safety, that he became entitled to one-third of that claim, on the death of his wife, for the statute gives to the husband, without exception, one-third of the wife's personal property, in case of her death, leaving children, Code, ch. 78, sec. 9.

In this decree, the court rightly proceeded upon the theory that the preference given by the statute does not extend to or override liens acquired on the property of the decedent, in his life time, by mortgage, deed of trust, judgment, execution and the like. Being general in its terms, it must be read in connection with, and in subordination to, the laws permit-

ting acquisition of such liens. *Reeves* v. *Ross,* 62 W. Va. 7. No preference under it over such liens is claimed. Nor is there any claim that the preference extends to the debts of a partnership of which the decedent was a member. The assets of the copartnership would necessarily be first liable for the debts of the firm, on the principle above stated. But it is insisted that a certain piece of property, known as the Ruttencutter lease was not partnership property, and that the court erred in treating it as such, by making the proceeds thereof liable for partnership debts. The existence of the partnership, for limited purposes, namely, ownership and operation of oil and gas properties, is admitted, but it is insisted that there is no lien on the Ruttencutter lease. However, Westerman executed or joined in a deed of trust on that particular lease, to secure a partnership debt, which was not recorded until after his death, and it is said that by reason of his death, before the recordation of the deed of trust, the liability of the estate, on the executorial account, became a lien upon the lease. In this conclusion, we are unable to concur. The statute gives no lien upon the property of the decedent. It simply determines the rights of creditors as to portions of the estate on which no liens exists.

Under a by-law of the Wetzel County Bank, a creditor of Westerman's estate, in large amount, inhibiting the sale, transfer or assignment of any of its stock by a stockholder, while indebted to the bank, the trial court accorded it a lien on twenty-one shares of such stock, standing on its books in the name of Westerman, at the time of his death. This stock had belonged to Wiley. Westerman had transferred it to his wife and she had then transferred it back to him. The certificate for sixteen shares thereof bears date August 17, 1903, and the certificate for the other five shares is dated October 10, 1904. The part of the decree allowing this lien is challenged on the ground of alleged invalidity of the by-law, and this contention is founded largely, if not altogether, on a provision of the statute, inhibiting state banks from making loans on the security of shares of their own capital stock. Code, 1913, ch. 54, sec. 79. At the time of the adoption of the by-law, issuance of the certificates and incurrence of the in-

debtedness, this provision of the statute was not in force. It was enacted in 1913. Prior to the date of its effectiveness, ninety days from February 18, 1913, such banks were impliedly, if not expressly, authorized to make loans on the shares of their capital stock as security, and to say this bylaw is invalid as to transactions perfected under it, before the passage of the act, would give the statute retroactive effect. In those instances in which the legislature has acknowledged power to make laws operate retrospectively, the intention to make them do so will not be inferred. To give a statute such an effect, it must contain terms clearly importing the intention. *Harrison* v. *Harman,* 85 S. E. 646. As to whether the subject matter of the by-law may be dealt with by the legislature, there is no occasion to inquire. The act is clearly prospective in effect. Before the statute was amended, it impliedly authorized banks to make loans on the security of shares of their capital stock, if statutory authority is necessary. Code, 1906, ch. 54, sec. 79.

Two notes for $3,000.00 each, executed by the Anita Oil Company, secured by a deed of trust and assigned by Westerman and Simmons to the First National Bank of New Martinsville, as collateral security for a note held by it, constituting the subject matter of certain provisions of the decree, are rather elaborately discussed in the briefs filed for Morris, Adm'r., and the First National Bank of New Martinsville; but the attitudes of these parties to said provisions are not very definitely stated. It seems that, pending the suit, the bank sold the notes, under a power of sale conferred by the assignment thereof, and bought them itself, at the price of $1,800.00. They are perfectly good for $6,000.00, since a trustee holds the proceeds of the property upon which they were secured, and they are the only notes assigned out of several secured by the deed of trust, wherefore they constitute the first lien on that fund. Counsel for the bank seem to contend that the bank's title by purchase is valid, and this claim is resisted by counsel for the administrator. Neither brief, however, seems to complain of the decree, which obviously treats these two notes as having been held by the bank as collateral. It recites that they are so held and then

directs the trustee to pay to the bank the sum of $6,000.00, with interest from November 16, 1911, in discharge of the two notes, and directs such payment to be "credited pro rata upon the liabilities joint and sole of C. G. Westerman" to the bank. Regarding the argument in the briefs as being directed, not at the decree, nor made in support of any complaint against it, but as pertaining to a matter shown by the record, but not embodied in the decree, our inference is that the parties are satisfied with what the court has actually done respecting the matter, wherefore we enter upon no inquiry as to the propriety of the court's action.

Certain items have been classed as partnership assets by the decree, which the evidence tends very strongly to prove are individual assets. These are included in an aggregate sum of $3,118.71, described as a fund in the hands of M. H. Willis, Special Receiver. As to this fund, the decree will be reversed to the end that the status of the several items thereof may be reconsidered.

In so far as the decree sustains exceptions to that part of the commissioner's report which finds indebtedness against the estate of Westerman in favor of C. S. Farmer, administrator *de bonis non* of the estate of Beulah Westerman, deceased, and makes it a debt first in order of payment against the whole of Westerman's estate, except funds in the hands of Lemon, trustee, and the proceeds of the Ruttencutter lease in the hands of Morris, Adm'r., and disallows that claim and the preference accorded it by law; and makes "all debts of C. G. Westerman liens of equal dignity and first in priority against the general fund in the hands of M. H. Willis, special receiver, and against all other assets of the personal estate of C. G. Westerman, save the Wetzel County Bank stock;" and holds the sum of $3,118.71 in the hands of M. H. Willis, Special Receiver, to be a partnership asset, it will be reversed, set aside and annulled; and it will be here adjudged, ordered and decreed that the estate of C. G. Westerman, deceased, is indebted to C. S. Farmer, Adm'r. *de bonis non* of Beulah Westerman, deceased, in the sum of $28,433.40, exclusive of interest, and that said administrator *de bonis non* is entitled to have said sum, with interest thereon according to law, paid

out of the estate of the said C. G. Westerman, in so far as the same is not subject to liens, debts due to the United States and taxes and levies assessed against the said Westerman, prior to his death, to the exclusion of, so far as is necessary, and in preference to, the unsecured general debts due from the estate of the said Westerman. In all other respects, the decree will be affirmed, and the cause will be remanded to the circuit court of Wetzel County, for ascertainment in conformity with law, of the entire amount due and owing said Farmer, administrator *de bonis non,* from the estate of said Westerman, including interest, and for a decree for the full amount thereof, when so ascertained. Costs in this Court will be decreed to C. S. Farmer, administrator as aforesaid, against the creditors of the estate of C. G. Westerman, deceased, named in the decree complained of.

*Reversed in part. Affirmed in part. Remanded.*