# CHARLESTON.

LOUISE E. KELLER v. R. M. WASHINGTON *et al.*

Submitted March 11, 1919.   Decided March 25, 1919.

1. HUSBAND AND WIFE—*Gift to Husband.*

    Delivery by a wife of her money or other property to her husband who uses it in his business without an agreement oral or written entered into by them at the time binding him to account therefor to her gives rise to the presumption of an intention on her part to bestow it upon him as a gift. (p. 662).

2. SAME—*Husband as Debtor or Trustee—Proof.*

    In order to create the relation of debtor and creditor or *cestui que* trust and trustee between husband and wife as to such transaction to the prejudice of his creditors, the proof must be ample, clear and satisfactory; and where the facts and circumstances tend to establish an intention on her part to give him her property without limitation or restraint, the mere parol testimony of both to show a private understanding between them of a different character, or that they regarded the transaction as a loan or trust, ordinarily will not suffice as against creditors of an insolvent husband to rebut the presumption of a gift. (p. 663).

3. SAME—*Gift to Husband—Presumption.*

    But where there is other evidence sufficient of itself to show, and corroborative of the statements of the wife coupled with the admissions of the husband tending to show, an intention to create a trust to invest for her benefit the property intrusted to him, an there is no conduct inconsistent with such an intention, and no circumstance warranting the suspicion that, in acknowledging the obligation to repay his wife, the husband was trying to favor o prefer her to the prejudice of his other creditors, the presump tion of a gift is deemed to be rebutted. (p. 663).

4. TRUSTS—*Acceptance of Money for Specific Purpose.*

    Where a person, not acting merely as agent, has or accepts possession and control of money or other personal property, not to deal with it as his own, but to hold and apply it for certain specific purpose, or for the benefit of certain specified persons, a valid and enforceable trust is created. (p. 665).

5. SAME—*"Express Trust"—"Resulting Trust"—"Constructive Trust."*

    An express trust springs from the agreement of the parties; a constructive or resulting trust from the construction of equity in order to satisfy the demands of justice. (p. 665).

6. LIMITATION OF ACTIONS—*Trusts—Repudiations.*

   The statute of limitations never applies to express trusts until and from the time the trustee repudiates the trust by unequivocal words or acts, and such repudiation is brought to the notice of the beneficiary in such a manner as to require him promptly to assert his rights.   (p. 665).

7. TRUSTS—*Express Trusts—Laches.*

   Though there may be instances in which laches will run against express trusts, courts of equity apply the rule in such cases less readily than in cases of constructive or resulting trusts, and rarely ever do so unless the lapse of time is of such duration and the circumstances of such character as to indicate clearly a relinquishment or abandonment thereof, or unless a situation has arisen in the nature of an estoppel which will make it clearly inequitable and unjust to enforce it.   (p. 666).

8. CREDITOR'S SUIT—*Life Claim Against Husband—Distribution.*

   When a wife places her personal property in the hands of her husband in trust to invest for her, and he later becomes insolvent, she may, upon declining to assert any possible lien rights she may have to the detriment of other creditors, present her claim as a general creditor, and is entitled to participate proportionately with other general creditors in the distribution of any fund derived from the sale of the insolvent's real or personal property, after all specific and general liens chargeable thereto are satisfied. (p. 668).

9. HUSBAND AND WIFE—*Indebtedness to Wife—Acknowledgment.*

   When the husband in such a case, years after he received his wife's money or property, acknowledges by written statement the validity of her claim against him, but seeks to defer payment or restitution until all his other debts are satisfied, her acceptance of such statement, when not based upon a valuable consideration, generally does not operate as a waiver of her right to participate with general creditors of the common debtor.   (p. 664).

10. CONTRACTS—*Waiver—Consideration.*

    No agreement to waive an existing legal right is valid unless it rests upon a consideration deemed legally sufficient.   (p. 664).

    (WILLIAMS, JUDGE, dissenting).

Appeal from Circuit Court, Hampshire County.

Suit by Louise E. Keller against R. M. Washington, Mary Cavitt Washington, his wife, and others.   From a decree overruling her exceptions to the report of the commissioner appointed to ascertain for court's information the realty of R. M. Washington, the liens against his estate, and the prior-

ities thereof, and confirming the report, Mary Cavitt Washington appeals.

*Reversed and remanded, with directions.*

*G. K. Kump* and *Walter C. Capper,* for appellant.
*J. S. Zimmerman,* for appellees.

LYNCH, JUDGE:

The appellant, Mary Cavitt Washington, acquired through the estate of her deceased father, Josephus Cavitt, valuable real and personal property owned by him in the state of Texas. The land devised or allotted to her she caused to be sold at the instance of her husband, R. M. Washington, to whom she was married in 1886. The proceeds of the sale she likewise at his instance delivered to him together with all or most of the personal property derived from her father's estate; and such of it as was not converted into money when so received he sold or assigned and apparently devoted the proceeds to his individual personal use. In this manner her patrimony came into his possession or under his control at various times after the marriage, though the dates of the receipt of all of it are not disclosed. She did not demand any notes or memoranda evidencing the receipt thereof or the purpose of its delivery to him, or if she did make such demand, he did not comply therewith until February 28, 1914, when, by way of recognition of an indebtedness to her for the various sums, aggregating $35,770.81, he executed a paper filed in the record to which we shall have occasion to refer at a later stage of this review.

The decree from which she has appealed overruled her exceptions to the report of the commissioner to whom the cause was referred to ascertain for the information of the court the real estate of R. M. Washington, and the liens chargeable against his estate, and the priorities thereof, and confirmed the report. The report and decree denied the right claimed by her to participate in the distribution of the proceeds of the sale of the lands and personal property of her husband, who, it seems, is hopelessly insolvent. His investments, though large and valuable, are grossly inadequate to meet his liabilities.

The refusal of such right is sought to be sustained by appellees, who are common and lien creditors of the insolvent, upon the grounds: (1) that the delivery of the money or property to the husband did not create the relation of debtor and creditor, but presumably was a gift to him by her; (2) that, if it was a debt, it is barred by the statute of limitations, or, if not by the statute, by her laches. She seeks to reverse the decree and supplant it by another allowing the claim on the ground that the money was delivered and received in trust for investment for her at interest pursuant to an oral agreement entered into between them on the several dates of the delivery. She does not, however, attempt to trace it to any specific property in which it was invested by him, or ask to have it declared to be a lien or charge against any particular part of her husband's lands or personal property, but she does ask to be permitted to join ratably with other creditors of her husband in the distribution of the surplus proceeds remaining after the payment in whole or in part of the specific liens on certain parcels of his real estate, not as a trust fund in his hands, but by way of enrichment of his estate to that extent, and merely as a debt entitled to such participation notwithstanding its character as a trust fund. In other words, as she cannot point out with certainty any property, real or personal, not subject to liens created by him with her consent evidenced by her joining with him in creating them, if such there be, she expresses a willingness to accept a share of such surplus ratably with other creditors of her husband.

Delivery by a wife of her money or property to her husband who uses it in his business without an agreement oral or written entered into by them at the time binding him to account therefor to her gives rise to the presumption of an intention on her part to bestow it upon him as a gift, and in order to create the relation between them of debtor and creditor as to such a transaction to the prejudice of his creditors, the proof must be ample, clear and satisfactory. *Bank* v. *Atkinson,* 32 W. Va. 203; *Zinn* v. *Law,* 32 W. Va. 447; *Bennett* v. *Bennett,* 37 W. Va. 396; *Crumrine* v. *Crumrine,* 50 W. Va. 226; *Horner* v. *Huffman,* 52 W. Va. 40; *Morris*

v. *Westerman,* 79 W. Va. 502, 508. Likewise where the facts
and circumstances tend to establish an intention on her part
to give him her property without limitation or restraint, with
the right to appropriate it to any purpose he may desire
without regard to any obligation to restore the possession or
account therefor to her, and he uses and deals with it as if
he were the real and sole owner, the mere parol testimony
of both to show a private understanding between them of a
different character, or that they considered the transaction
as a loan or trust, ordinarily will not suffice as against cred-
itors of an insolvent husband to rebut the presumption that
a gift was intended. *Zinn* v. *Law, supra; Horner* v. *Huff-
man, supra; Cheuvront* v. *Horner,* 62 W. Va. 476; *Morris* v.
*Westerman, supra.*

The basis for the presumption of a gift as between hus-
band and wife, and the difficulty of overcoming it by proof
when the rights of creditors are involved are well stated in
*Morris* v. *Westerman, supra,* page 508: "If she had had
the property in her possession or the title in her name and
within her control, and delivered or conveyed it to him, or
permitted him to take possession of it without any under-
standing or agreement for return thereof, there would have
been a presumption of a gift. But if, under such circum-
stances, he had contemporaneously given her his note or
other obligation, or even verbally promised to pay or return
it, no such presumption would have arisen. The trans-
action would have created the relation of debtor and credi-
tor. In most instances, however, if not all of them, the ver-
bal agreement is rejected for want of sufficient proof or in-
consistency with conduct." Here there is neither such in-
consistency of conduct nor want of sufficient proof to rebut
the presumption of gift. True there was no written agree-
ment to invest for the wife's benefit, no notes or other doc-
umentary evidence of the real character of the transaction
given. All the negotiations were oral. The money or prop-
erty passed directly to Mrs. Washington or to her husband
through the hands of her brother, J. B. Cavitt, who acted on
behalf of his and Mrs. Washington's mother, the executrix
of their father's estate, and as such agent he made all the

settlements with the heirs of their father and distributees of the estate, as he also did subsequently with respect to their mother's estate. Mrs. Washington's share of the property inherited from both sources he paid to her personally or to her husband at her direction; but not without protest in her behalf manifested by correspondence conducted by him with her and her husband regarding the application of the money, the result of which was, as he says, that "finally he (the husband) stated to me that he had all of Mrs. Washington's money invested for her in such a way that she would get it back with good earnings." He also says: "From many statements made to me by R. M. Washington at the time he received these different sums of money and on many other occasions he induced me to believe that he was getting all this money from my sister to be invested for her, and that he was in duty and honor bound to handle it for her in such a way that it would make her good interest." The reasonable deduction from this testimony given by a witness having peculiar knowledge of these frequent transactions, and being an active agent participating in them during a period of several years, is that he meant what his language clearly imports, namely, that R. M. Washington received the property upon the agreement to reinvest it for his wife, and not that she had loaned it to him. It is not susceptible of any other reasonable interpretation. The trend of what the witness says, the force of the language he uses, and the implications embodied in it, warrant but one conclusion when finally construed as a whole. So that without accrediting any probative force or value to the oral testimony of Mrs. Washington relative to the purpose for which she delivered the money or its equivalent to her husband, or his recognition in the paper signed by him of the liability and amount thereof, there remains in the record enough to permit us to discern the true character of the negotiations between them in respect to her property. The only effect of the combined testimony is to render more obvious that which is sufficiently apparent for the purpose of reaching a just conclusion as to the merits of her claim.

Certainly in view of the separation before, and the appar-

ent hostility existing between them at the time the paper was executed, and in view of the harsh terms of the paper itself, we perceive no circumstance to excite or warrant the suspicion that, in acknowledging the obligation to repay his wife, Washington was trying to favor or prefer her to the prejudice of his other creditors. Indeed the terms so prescribed deferred payment to her until after his other debts were satisfied. Clearly this he could not lawfully do without her consent or promise to forebear to urge immediate payment or to sue to enforce payment, and if she had so promised, of which there is not a word of proof, it would not avail because there was no consideration on which the promise could stand. No agreement to waive a legal right is valid unless it rests upon a consideration deemed legally sufficient. *Charleston Lumber Co.* v. *Friedman,* 64 W. Va. 151; *Bays* v. *Johnson,* 80 W. Va. 559, 562. This postponement he attempted to justify or excuse upon the assumption that an unqualified agreement to pay her would tend to the further embarrassment and complexity of his business relation to other creditors with whom he had contracted the indebtedness, to which he desired to subordinate payment to her instead of according to her the benefit of a coordination justly due her. The mere acceptance of the paper, we think, did not operate as a waiver of the right to press her claim, the justness of which he so acknowledged. Evidently she did not acquiesce in the voluntary restrictions so placed upon her rights, and his stipulation to that effect was inoperative, for he was already in duty bound to return to her the money which he held. Beyond the mere acceptance of the paper, no witness testifies that she agreed to postpone the assertion of her claim. She cannot be prejudiced by the failure to call R. M. Washington to testify in her behalf. She was not bound to do so, though he was within reach of the court's process.

The presumption of a gift being overcome or rebutted, we are of opinion that the husband in accepting the money assumed to act as trustee for his wife with regard to its investment. The difference between an express and a constructive or resulting trust is clearly set forth in *Currence* v.

*Ward*, 43 W. Va. 367, and *Newman* v. *Newman*, 60 W. Va. 371, 376. The former springs from the agreement of the parties, the latter from the construction of equity in order to satisfy the demands of justice. Clearly the understanding and agreement of the parties here was that the husband should undertake for the wife the investment of her property, and return to her the principal thereof unimpaired, but augmented by the interest it should earn under his management. The elements of a loan are wanting. The agreement was not to pay her interest for the use of her money, but the interest earned by it. Where a person, not acting merely as agent, has or accepts possession and control of money, promissory notes, or other personal property, with the express or implied understanding that he is not to hold it as his own absolute property, but is to hold and apply it for certain specific purposes, or for the benefit of certain specified persons, a valid and enforceable trust exists. 39 Cyc. 70-71; *Stanley* v. *Pence*, 160 Ind. 636; *Graham's Adm'r.* v. *English*, 160 Ky. 375; *First Nat'l Bank* v. *Hinkle*, (Okl), 162 Pac. 1092. It is true that the relation of principal and agent is very similar to that involved in a trust between the cestui and trustee, and it is frequently difficult to mark the dividing line between them. Yet in this case there was more than an agency involved. An agent usually acts in a representative capacity in the name of the principal and binds the latter by acts done within the scope of the agency. A trustee does not act in such a representative capacity, but not infrequently deals with others as one having full control and right of disposition of the property intrusted to him, though vested in him for the benefit of another. The nature of the husband's control over the property in this case, and the judgment and discretion required were such as to constitute an active and continuing administrative trust. *First Nat'l. Bank* v. *Hinkle, supra.*

As a further argument to support the decree, appellees assert that the claim of Mrs. Washington is barred either by the statute of limitations or by laches. It is well settled, however, that the former never applies to express trusts until and from the time the trustee repudiates the trust by une-

quivocal words or acts, and such repudiation is brought to
the notice of the beneficiary in such a manner as to require
him promptly to assert his rights.  *Ruckman* v. *Cox,* 63 W.
Va. 74.  And, though there may be instances in which laches
will run against express trusts, courts of equity apply the
rule in such cases less readily than in cases of constructive or
resulting trusts, and rarely ever do so unless the lapse of
time has been so long and the circumstances of such charac-
ter as to establish clearly a relinquishment or abandonment
thereof, or unless a situation has arisen in the nature of an
estoppel which will make it clearly inequitable and unjust to
enforce it.  *Newman* v. *Newman,* 60 W. Va. 371; *Roush* v.
*Griffith,* 65 W. Va. 752, 762; *Ash* v. *Wells,* 76 W. Va. 711.

Wherein the doctrine of laches applies to exclude the par-
ticipation demanded by appellant, counsel do not point out,
except by its mere invocation to their relief from the burden
of her claim, or as revealed by the circumstances appearing
in the cause.  There is nothing to show relinquishment or
abandonment of the claim against her husband.  The deli-
cate relation subsisting between the parties may have con-
stituted the reason for her long acquiescence in his use of the
property unaccompanied by the slightest intention to re-
linquish or abandon her claim to the property.  *Morris* v.
*Westerman, supra.*  Her silence is not a decisive or a clear
index to her intention.  In going to the inception of this
transaction, we find an agreement by the husband to take and
invest his wife's property in her behalf, a trust agreement
not deprived of its character as such because of the long
acquiesence of the wife.  With respect to the trust deeds
in which she joined her husband, it may well be that she
would have been estopped to assert her claim as against those
whose claims are secured by such instruments.  But no ques-
tion arises concerning them, for they seem to have been fore-
closed and the liens satisfied to the extent of the sums real-
ized from the property sold.  And as against unsecured cred-
itors, she is not attempting to secure preferential treatment
to their detriment, as we understand, but expresses willing-
ness to stand equally with them as a general creditor.  It

cannot be said, therefore, that her claim is barred merely because of delay in the assertion of her right.

Looking into the situation without prejudice against her or any creditor of her husband or predilection for either or any of them, so far as their legal or equitable rights and interests are involved, and with no object other than to discover the real merits of the controversy, we observe no substantial reason founded upon the circumstances revealed for denying the claim of the wife to have set apart to her what she asks. The theory of a gift being unsupported except by the legal presumption, sufficiently rebutted, as we have seen, these facts stand out prominently as unquestioned by any pretense of a contrary purport. The vast real estate of her husband, most of which he perhaps acquired by disloyalty to the trust reposed in him, she has willingly permitted to be exhausted and applied to the liquidation of his lien liabilities; whereby her heritage has in large measure already gone to reimburse his creditors. Had she required the execution of formal obligations binding him to repay her the money so advanced on trust and expended, she knows not how or where, could the creditors equitably or legally deny or question her right to participate as distributee of his estate, though they may not have known of the documents? This question this court answered in *Righter* v. *Riley*, 42 W. Va. 633, and in point 3 of the syllabus said: ''Where it is clearly shown that a married woman holds a bona fide debt against her husband, she is entitled to the same legal rights as any other creditor, except as to remedy.'' Likewise in *Bolyard* v. *Bolyard*, 79 W. Va. 554, the discussion preliminary to a decision of the case notes the difference between the right of husband and wife to enter into contracts as between themselves and the enforceability of such contracts in actions at law and suits in equity. And with peculiar aptness and perspicuity the opinion says: ''In the broad sense of the law, including the equity jurisprudence as well as the legal, they are valid. The partial condemnation does not rest upon anything vicious in the sense of immorality. It goes no further than their exclusion from legal cognizance, and this exclusion is effected merely to place them within the

exclusive cognizance of that class of courts whose procedure and remedies are sufficiently flexible and varied to enable them to do justice under all circumstances.'' *Bolyard* v. *Bolyard* and *Righter* v. *Riley* are in accord as to the views expressed .in both respecting the enforcement of the contracts of husband and wife made with each other during coverture, if just and ˙reasonable, and the forum to which recourse must be had for that purpose. Hence since such contracts are enforceable only in equity, they are not totally invalid, but only partially so, and their validity, or rather their enforceability depends to some extent upon the forum in which suit on them is brought, as sometimes is the case with other contracts. This being a suit in a court of equity, there can be no question of the right of Mrs. Washington to enforce the claim asserted by her, at least so far as the forum is concerned; and for the further reason that equity is the proper tribunal in which to enforce trusts.

Though her claim originated as a trust, she is not attempting to assert lien rights paramount to those of other lien creditors, and we do not say that she could have done so to their prejudice. As to any balance remaining unpaid after the foreclosure of all specific liens, her claim stands upon an equality with respect to those of other general creditors, thus making it a contest between general creditors. Other creditors of the insolvent cannot be heard to say that she is estopped to assert her claim because they were ignorant of its existence, when we have already seen that it is not barred by the statute of limitations or by laches. They are not injured by the fact of their ignorance of her rights any more than one of them is injured because of his ignorance of the claim of any other creditor unrelated to the insolvent by blood or marriage. Such defense would be eminently proper in the circumstances presented if the wife was trying to assert a preferred claim.

For these several reasons assigned we are of opinion to reverse the decree and remand the cause with direction to allow the claim contested to participate proportionally with other general claims in the distribution of any fund derived from the sale of the R. M. Washington property not applied

to the discharge of specific liens on each tract subject thereto, and to judgment or other lien encumbrances thereon, and to grant to Mrs. Washington the right to participate pro rata with other creditors as to such excess.

*Reversed and remanded, with directions.*


WILLIAMS, JUDGE, *(dissenting):*

I do not think the evidence offered by Mrs. Washington to establish the alleged trust between herself and husband is sufficiently certain and definite to overcome the legal presumption that the funds belonging to her, which she permitted him to receive and handle as if they were his own, were mutually understood as a gift. She does not attempt to state any agreement between them, and no note or memorandum was made at the time he received any part of her funds, although he received many thousands of dollars at different times, extending over a period of thirty years. She kept no memoranda of the amounts and, apparently, had to depend on her brother for the information as to the sums her husband had received. Her brother, the only other witness to any such trust agreement, simply says: "From many statements made to me by R. M. Washington at the times he received these different sums of money, and on many other occasions he induced me to believe that he was getting all this money from my sister to be invested for her, and that he was in duty and honor bound to handle it for her in such a way that it would make her good interest." What did his brother-in-law say that induced his belief? Witness does not say. Perhaps his belief was ill-founded. This testimony, I think, falls far short of the rule as to clear and certain evidence required to overcome the presumption of a gift by the wife to the husband, after the lapse of years and the intervention of rights of his creditors. *R. D. Johnson Milling Co.* v. *Read,* 76 W. Va. 557; *Miller* v. *Cox,* 38 W. Va. 747; *Bennett* v. *Bennett,* 37 W. Va. 396; and *Bank* v. *Atkinson,* 32 W. Va. 203.